[L. A. No. 29680. In Bank. Jan. 30, 1970.]

TRUNNEL PRICE, Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Artie G. Henderson for Petitioner.

No appearance for Respondent.

James Don Keller, District Attorney, Richard H. Bein and Terry J. Knoepp, Deputy District Attorneys, for Real Party in Interest.

## OPINION

PETERS, J.—Petitioner, Trunnel Price, seeks writs of prohibition and mandamus to restrain respondent court from using against him certain

evidence obtained in the execution of a search warrant and to compel the court to order disclosure of the identity of a confidential informer.

Price was charged by an indictment with discharging a firearm at a vehicle, two counts of assault with a deadly weapon, and two counts of attempted murder. He has entered pleas of not guilty to all counts.

 The allegations of the affidavit for search warrant executed by Officer Trumper may be summarized as follows: Two police officers told Trumper that on October 23, 1968, at 2 a.m. while driving on the 3200 block of Imperial Avenue, they heard a loud explosion to the right of their vehicle and observed a hole in the top of the right rear door and the left rear window smashed out. A police criminalist informed him that the hole was made by a projectile from a 7.5 to 8 mm. caliber rifle. On October 23, a reliable informant, who had previously given him information resulting in the arrest and conviction of 12 persons for felonies, told him that he "had personal knowledge" that Price had in his possession on October 21 a rifle with a scope mounted on the top of it. The informant also stated that on October 23 (no time specified) he observed a conversation between persons "known by him" to have been present at the 3200 block of Imperial Avenue at 2 a.m. on October 23, in which it was stated that Price in the company of Edward Bradshaw, Jr., had shot at a police vehicle at that time and place.

The affidavit also states that at 2:30 a.m. on October 23 a police officer observed and talked with Price while another talked with Bradshaw at different places, each of which was about one block from the place where the shooting occurred. The affiant also stated on the basis of his own knowledge that Price lived at 3327 "L" Street, San Diego, and that Bradshaw lived with his mother at 3290 Imperial Avenue.

In denying the motion to suppress the evidence obtained pursuant to the warrant, the judge reasoned that the affidavit sufficiently showed that the crime was committed, that Price had in his possession a rifle with a scope on it two days before the shooting, that Price was within one block of the scene of the shooting one-half hour after the commission of the crime, that there were statements of Price's guilt made adjacent to the scene of the crime and at or near the time of the shooting, and that, although the statements were hearsay, when added to the other information supplied they could be given some weight and could raise some rational suspicion.

In denying the motion for disclosure of the informant's identity, the judge stated that the affidavit shows that the statements of guilt by persons "known by him" to have been at the scene of the shooting is in the nature of a hearsay declaration and not a recital of matter to which he was in fact a percipient witness. Contrasting the informer's claim of "personal knowl-

edge" as to possession of the rifle with his claim that the conversants' presence at the site of the shooting was "known by him," the judge reasoned that the informer was merely relating hearsay and had not himself observed the conversants at the scene of the crime. The judge concluded that the informer was not a material witness on the issue of guilt, and that disclosure of his identity was not prerequisite to a fair trial.

We recently considered the issuance of search warrants based upon information supplied by a confidential informant in *People* v. *Hamilton,* 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681]. We there pointed out: "In *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], the United States Supreme Court stated: 'Although an affidavit may be based upon hearsay information and need not reflect the direct personal observations of the affiant [citation], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed [citation], was "credible" or his information "reliable".' (Fn. omitted.) (378 U.S. at p. 114 [12 L.Ed.2d at p. 728].) The high court has since referred to this formulation as '*Aguilar's* two-pronged test.' (*Spinelli* v. *United States* (1969) 393 U.S. 410, 413 [21 L.Ed.2d 637, 642, 89 S.Ct. 584].)

"Following *Aguilar,* California courts have held that for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable. (*People* v. *Tillman* (1965) 238 Cal.App.2d 134, 138 [47 Cal.Rptr. 614]; *People* v. *West* (1965) 237 Cal.App.2d 801, 804-805 [47 Cal.Rptr. 341]; see *People* v. *Aguilar* (1966) 240 Cal.App.2d 502, 509-511 [49 Cal.Rptr. 584].)"

In holding that the affidavit was insufficient in *Hamilton* under the first "prong" of the *Aguilar* test because it failed to set forth any of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, we quoted from *Spinelli*: " 'In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip described the accused's criminal

activity in sufficient detail so that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation.' (393 U.S. at p. 416 [21 L.Ed.2d at p. 643].)" (71 Cal.2d at pp. 180-181.)

The broad language of *Aguilar* and *Spinelli* quoted in *Hamilton* strongly suggests that the issuance of a search warrant may not be based upon an informant's hearsay statement which in turn is based not upon the informant's personal knowledge but upon the hearsay statement of another. However, we need not determine the matter because, even assuming that a search warrant could properly be issued on the basis of such double hearsay, both "prongs" of the *Aguilar* test would have to be met both as to the informant's statement and as to the statement of the declarant reported by the informant. (Cf. *People* v. *Escollias,* 264 Cal.App.2d 16, 18-19 [70 Cal.Rptr. 65]; *People* v. *Pease,* 242 Cal.App.2d 442, 446-447 [51 Cal.Rptr. 448]; *People* v. *Stewart,* 241 Cal.App.2d 509, 514-515 [50 Cal.Rptr. 630].)

In the instant case neither "prong" is met with regard to the conversation overheard by the informant. The affidavit does not show that the persons overheard by the informant were speaking with personal knowledge of the matters contained in the conversation, that such persons were credible, or that their information was reliable.

It also should be pointed out that there is no sufficient allegation of personal knowledge with respect to Price's possession of a rifle with a scope mounted upon it. ▮ As we have seen, "the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement." ▮ In the instant case, the affidavit does not allege the facts by which the informant acquired "personal knowledge" of Price's possession or the place where Price had possession. To permit a conclusory allegation of "personal knowledge" to satisfy the requirements of *Aguilar* would defeat the policy in favor of specificity reflected by that case, as well as the requirement of a showing before a magistrate sufficient to provide a reasonable basis for intrusion upon Fourth Amendment rights. ▮ In common usage, "personal knowledge" is not always the equivalent of "I saw" but often refers merely to matters which the informer heard or read from a source which he credits, and the test is not whether the informer had doubts about his information but whether an independent magistrate should credit the informer's information.

■ In any event it is clear that the additional information in the affidavit does not furnish a basis for crediting the conversation overheard by the informant. The facts, apart from those contained in the conversation, show only that Price had a rifle with scope two days before the offense, and that he was seen a block away one-half hour after the shooting. There is no evidence that, when so observed, he acted furtively or attempted to avoid speaking with the police officer. The conversation with the officer is not set forth, and no inference of criminal activity on Price's part may be drawn. (*People* v. *Scoma,* 71 Cal.2d 332, 339-340 [78 Cal.Rptr. 491, 455 P.2d 419].) For this reason *People* v. *Benjamin,* 71 Cal.2d 296, 302-303 [78 Cal.Rptr. 510, 455 P.2d 438], where the officers observed several suspicious activities by the defendant, is distinguishable, and we cannot conclude that the affidavit in the instant case sets forth facts from which the magistrate could reasonably have concluded that the informant's report of unlawful activity on the part of Price was reliable. Accordingly, the court erred in refusing to suppress the evidence seized in the execution of the search warrant.

The claim that the name of the informer must be disclosed is based on the statement of the informer that the persons overheard in the conversation were "known by him" to have been present at the scene of the shooting at the time of the shooting. It is urged that the informer could not have known of the presence of the speakers at that time or place unless he himself was there. In this regard the People rely solely on the view taken by the judge that it was not shown that the informer was present at the scene of the shooting because the allegation "known by him" when viewed in the light of the statement of "personal knowledge" also made by the informer is an allegation of hearsay and not one of personal observation. The People do not dispute that, if Price had shown that the informer was a witness at the scene of the crime, disclosure of identity or dismissal would be required. (*People* v. *Williams,* 51 Cal.2d 355, 359 [333 P.2d 19], and cases cited.) The issue as framed by the briefs and the judge's opinion is whether a sufficient showing has been made.

■ When it appears from the evidence that an informer is a material witness on the issue of the defendant's guilt, the informer's identity may be helpful to the defendant and nondisclosure would deprive him of a fair trial. (*Honore* v. *Superior Court,* 70 Cal.2d 162, 167 [74 Cal.Rptr. 233, 449 P.2d 169].) The People must either disclose the informer's identity or incur a dismissal. (*People* v. *Garcia,* 67 Cal.2d 830, 836 [64 Cal.Rptr.

110, 434 P.2d 366]; *People* v. *McShann*, 50 Cal.2d 802, 808 [330 P.2d 33].)

■ The defendant need not prove that the informer would give testimony favorable to the defense in order to compel disclosure of his identity, nor need he prove that the informer was a participant in or even an eyewitness to the crime. The defendant's "burden extends only to a showing that 'in view of the evidence, the informer would be a material witness on the issue of guilt and nondisclosure of his identity would deprive the defendant of a fair trial.' (*People* v. *Williams* (1958) 51 Cal.2d 355, 359 [333 P.2d 19].) 'That burden is discharged, however, when defendant demonstrates a reasonable possibility that the anonymous informant whose identity is sought could give evidence on the issue of guilt which might result in defendant's exoneration. "No one knows what the undisclosed informer, if produced, might testify. He might contradict or persuasively explain away the prosecution's evidence. *It is the deprival of the defendants of the opportunity of producing evidence which MIGHT* [original emphasis] *result in their exoneration which constitutes the error . . . ."* '

"[B]y the very nature of the problem here confronting defendants it is impossible for them to state *facts* which would show the materiality of the informant's testimony. Since they do not know his identity they cannot possibly state factually what he will say if he is required to testify. All that defendants are required to do is to demonstrate 'a reasonable possibility that the anonymous informant . . . could give evidence on the issue of guilt which might result in [their] exoneration.' (*People* v. *Garcia, supra,* 67 Cal.2d 830, 840.)" (Italics in the original quote.) (*Honore* v. *Superior Court, supra,* 70 Cal.2d 162, 167 et seq.)

In *Honore,* the informer visited defendant's apartment at a time when defendant was in custody and four other persons were at the apartment. Narcotics were subsequently found there. In requiring disclosure or dismissal, we reasoned that the identity of the four persons was highly relevant and that since the informant saw at least four persons there his testimony as to their identity and activities " '*might* result in [defendants'] exoneration.' " (*Id.,* at p. ⁵168, italics in original; see also *People* v. *Perez,* 62 Cal.2d 769, 773-774 [44 Cal.Rptr. 326, 401 P.2d 934].)

■ In light of the difficult problem of a defendant who is unaware of the information which might be supplied by the unnamed informer, the defendant's burden of showing that the informer is a material witness on the issue of guilt does not require proof of that fact but only some evidence of a "possibility" that the unnamed informer is a material witness.

■ The identity of the persons overheard by the informer, as in *Honore,* is highly relevant since they were alleged to be present at the commission of the crime, and the ambiguous statement that the informer overheard a conversation by persons "known by him" to have been present at the commission of the crime is sufficient to establish a "possibility" that the informer himself was present at the scene of the crime. Accordingly, Price made a sufficient showing of a "possibility" that the informer was a material witness on the issue of guilt.

Let a peremptory writ of mandate issue directing the respondent superior court to suppress the evidence obtained in execution of the search warrant and further directing the court to order the disclosure of the identity of the confidential informer within a reasonable time to be fixed by the court on penalty of dismissal if this is not done.

Traynor, C. J., Tobriner, J., and Sullivan, J., concurred.

**MOSK, J.**—I concur in part and dissent in part.

The petitioner is entitled to one of two alternatives. The trial court gave him neither; that was error. The majority generously give him both; that is equally erroneous.

If the affidavit for the warrant is defective because (a) the facts related in the conversation are not matters within the personal knowledge of the informant (*People* v. *Hamilton* (1969) 71 Cal.2d 176, 180 [77 Cal.Rptr. 785, 454 P.2d 681]), or (b) no facts are shown relating the underlying circumstances of how the informant knows the conversants were present at the scene (*Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584]), then clearly the informant was not a material witness and his disclosure should not be compelled. On the other hand, if the informant appears to be a percipient witness to the events at issue and his identity must therefore be revealed, it follows that the affidavit based upon his information does not fall into the category of impermissible hearsay.

The majority hold the informer was not present for purposes of the affidavit, but he was present for purposes of disclosure. The incongruity is too glaring to require belaboring.

I would require the disclosure of the informant because the affidavit for the warrant implies in several instances that he had personal knowledge of significant events. The terms "personal knowledge" and "known by him" are code words meaning firsthand knowledge which can be obtained only by physical presence. The informer was thus a material witness and his

identity must be revealed by the People or they must incur a dismissal. (*Honore* v. *Superior Court* (1969) 70 Cal.2d 162, 167 [74 Cal.Rptr. 233, 449 P.2d 169].)

By that same token, however, the informer's information related in the police officer's affidavit is reduced from hearsay upon hearsay to mere hearsay. It is clear, of course, that an affidavit may be based upon hearsay if there are underlying circumstances related in support thereof. (*Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509].) The following underlying circumstances adequately buttress the hearsay in the affidavit:

(1) the officer set forth with sufficiency the basis upon which he knew the informant to be reliable;

(2) the informant had personal knowledge—i.e., he saw—a rifle with a telescopic sight in possession of the petitioner two days before the crime involved was committed;

(3) the crime was of such a nature that it could have been committed most readily from a distance by the use of a rifle with a telescopic sight;

(4) the petitioner lived in the vicinity in which the offense was committed;

(5) the officer knew "upon his personal knowledge"—not hearsay—that petitioner was present one block from the area where the assault took place shortly after the assault;

(6) the crime involved a serious breach of the peace, and the necessity for immediate solution, as well as for the prevention of further violence, indicated exigent circumstances.

Thus the authorities had the petitioner placed at or near the scene of a crime of violence, close to the time the offense was committed, and they had him in recent possession of the type of lethal weapon most likely used in the assault. This combination of corroborative allegations, under exigent circumstances, adequately meets the test for determining the sufficiency of an affidavit for the issuance of a search warrant, as prescribed by *People* v. *Stout* (1967) 66 Cal.2d 184, 192-193 [57 Cal.Rptr. 152, 424 P.2d 704], namely, "whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously entertain, a strong suspicion of the guilt of the accused." To the foregoing rule must be added the *Spinelli* caveat that the test to be applied by the magistrate is that "based upon a common sense reading of the entire affidavit."

The majority cling to the rhetoric but overlook the *ratio decidendi* of *Aguilar* and *Spinelli*. It is, as noted on pages 110-111 of *Aguilar,* that an "evaluation of the constitutionality of a search warrant should begin with the rule that 'the informed and deliberate determinations of magistrates empowered to issue warrants . . . are to be preferred over the hurried action of officers . . . ,' " and that the protection of the Fourth Amendment consists in requiring that the inferences of reasonable men " 'be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.' "

The affidavit for this warrant was detailed, not merely an abbreviated form. It was submitted to a neutral and detached magistrate. It was thoughtfully reviewed in a 10-page memorandum by the superior court judge. It was reviewed again by the Court of Appeal, which denied petitions for prohibition and mandate. I cannot hold that all three courts erroneously approved the issuance of the warrant.

In finding error, the majority now add another to the unfortunate congeries of cases that can only have an inhibiting effect upon law enforcement agencies which seek in good faith to comply with the public policy favoring reliance upon warrants instead of probable cause. (See my dissents in *People* v. *Sesslin* (1968) 68 Cal.2d 418, 431 [67 Cal.Rptr. 409, 439 P.2d 321]; *People* v. *Hamilton* (1969) *supra,* 71 Cal.2d 176, 183; *People* v. *Scoma* (1969) 71 Cal.2d 332, 340 [78 Cal.Rptr. 491, 455 P.2d 419].)

I would grant a peremptory writ of mandate directing the respondent superior court to order the disclosure of the identity of the confidential informer, but I would deny a writ ordering suppression of evidence.

**BURKE, J.**—I dissent. I would uphold the trial court's determination that the informer was not a material witness on the issue of guilt, and that disclosure of his identity was not prerequisite to a fair trial.

I concur in that portion of the dissenting opinion of Justice Mosk upholding the sufficiency of the affidavit for the issuance of the search warrant for the reasons stated therein.

I would deny the issuance of a writ under these circumstances.

McComb, J., concurred.

The petition of the real party in interest for a rehearing was denied February 25, 1970. McComb, J., and Burke, J., were of the opinion that the petition should be granted.