[Crim. No. 18580. Second Dist., Div. Two. Mar. 18, 1971.]

In re JEAN M., a Person Coming Under the Juvenile Court Law.
CLIFFORD C. ROMER, as Chief Probation Officer, etc., Plaintiff and Respondent, v.
JEAN M., Defendant and Appellant.

[Case caption redacted]

## COUNSEL

Bauman & Tyler and Richard A. Tyler for Defendant and Appellant.

Evelle J. Younger, Attorney General, William E. James, Assistant Attorney General, and Frederick R. Millar, Jr., Deputy Attorney General, for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—A petition was filed with the Superior Court of Santa Barbara County sitting as a juvenile court seeking to have appellant one Jean M., a minor, declared a ward of the court pursuant to section 602 of the Welfare and Institutions Code. The petition alleged that the appellant had violated sections 11530 and 11556 of the Health and Safety Code in that on March 19, 1970, she (1) possessed marijuana, and (2) was knowingly in or about a place where narcotics were being unlawfully used.

Thereafter appellant moved to suppress certain evidence seized at the time of her arrest. The court refused to suppress the challenged evidence. At the jurisdictional hearing, the court dismissed the allegation of possession of marijuana but found that appellant had violated section 11556 of the Health and Safety Code, and declared her to be a ward of the court. This is an appeal from the referee's order of disposition pursuant to section 800 of the Welfare and Institutions Code.

## FACTS

On March 18, 1970, a warrant was issued for the search of apartments 102 and 207 at 15 Chapala Street, Santa Barbara, California. The search warrant was based on an affidavit of Deputy Sheriff Fred W. Dickey of the Santa Barbara County Sheriff's Department.

The affidavit contained a detailed description of the subject apartment house as well as a brief delineation of the contraband and narcotic paraphernalia which was expected to be found inside the subject apartments.

In support of his assertion that he had reason to believe that hashish and paraphernalia for the smoking thereof was to be found in the two apartments, the affiant Deputy Sheriff Dickey alleged in pertinent part as follows:

"Affiant received information from a confidential reliable informant that on the 15th of March, 1970, said informant personally contacted a male white subject known only as 'Steve,' the occupant of room 207, 15 Chapala Street. That said informant further stated that a conversation took place between said informant, 'Steve' and another unknown male subject concerning the purchase of a quantity of hashish. 'Steve' offered to sell quantities of hashish either in Gram amounts for $10.00 per gram or in Ounce amounts for $30.00 an ounce. Said informant further advised affiant that while in the said room, he personally observed 'Steve' sell two small foil wrapped packages to the other male subject for $20.00. Informant related that both of the foil packages were opened in his presence and that he observed a dark colored material in both packets that appeared to him to be similar in appearance and odor to material that he had observed in the past and had been found by analysis to be hashish. Informant advised Affiant that at this time and place he observed 'Steve' to remove two plastic bags from a drawer in the kitchen and to hold up the bags and contents for inspection by the said informant and the other male subject. Informant stated that he personally checked one of the bags and found the contents to be a rectangular dark colored piece of material that appeared to be hashish and estimated to be approximately one ounce in weight. Said Confidential Informant related that while in said room 207 and following the sale of the two foil wrapped packages to the male subject by 'Steve,' Steve cut a portion of suspected hashish from a similar package and placed this piece into a pipe. Steve then lit the material and proceeded to smoke from the pipe. Informant advised affiant that the odor from this material was a very distinctive odor and was in his opinion the odor of burning hashish.

"Your affiant received additional information from the same reliable confidential informant: Informant advised that on 17 March 1970, said

informant personally went to room 207, 15 Chapala Street and at that time contacted the occupant of said room, this being a female, cauc., approximately 18 yrs, 5-6, long black hair. Informant related that he ask [sic] to see 'Steve' and was then taken by female subject to room 102, 15 Chapala Street, located in same building as 207. Said female knocked *on door of 102* and inquired as to the whereabouts of Steve. A male voice from within the room inquired, 'Is that guy with you the one that wants the hash?' Said female replied in the affirmative. The male voice then stated, 'Steve's not here right now, have him wait around for a while till he gets here.' Confidential Informant and female then returned to room 207 and at this time female stated, 'There are four grams left, how many do you want?' Informant stated he told her that he would wait until Steve got back as he was interested in buying ounces. Female stated that Steve would not sell ounces at this time. Informant related that he then told the female that he would return later that night and then left the room.

"Confidential Informant later the same day, 17 March 1970 observed suspect Steve on Bath Street in the City of Santa Barbara. Contact was made with Steve and at that time Informant inquired about purchasing hashish. Informant stated that Steve told him that he was not going to do ounces but indicated he had $500.00 worth of grams to sell. Steve then told Confidential Reliable Informant that he did not want the informant going to his room, room 207, when he wanted to purchase the hashish, but rather to go to room 102 of the same building, and the guy in that room would have the hashish for the informant.

"   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

"Your Affiant received information from Arthur Scotland, Agent, State Bureau Narcotics Enforcement, that said Agent on 17 March 1970 at approximately 2200 hours, went to room 207, 15 Chapala Street and at that location made contact with the occupants of said apartment, a MWA [Male White American] known as 'Jim' approximately 18-22 yrs, blond hair, and three unidentified female subjects of approximately same age. Agent Scotland told Affiant that he entered the room and learned from the occupants that 'Steve' was not there at this time. While in the room Scotland told affiant that he personally observed the occupants of the room to be smoking a pipe, passing it from one to the other and that he detected the odor of burning hashish. Scotland stated that his training and experience has made it possible for him to recognize the odor of burning hashish and further that his experience has shown that the passing of the pipe from person to person is the common manner of smoking marijuana or hashish."

At approximately 2:30 a.m. on the morning of March 19, 1970, the

search warrant was executed and officers searched both apartments 102 and 207. The officers conducting the search of apartment 102 uncovered several grams of hashish, paraphernalia for the smoking of hashish, marijuana, and a hypodermic kit. Five persons, including the minor Jean, and one Steven Smith, were arrested during the search. At the time of her arrest appellant was found to have a small amount of hashish in her possession.

## ISSUES ON APPEAL

This appeal presents two questions:

(1) The sufficiency of the affidavit in support of the search warrant directed to apartment 102;

(2) The sufficiency of the evidence to support a finding that appellant had knowingly been present in a room where narcotics were being used.

## THE SEARCH OF APARTMENT 102

Appellant concedes that the warrant to search apartment 207 was adequately supported by the affidavit of Deputy Sheriff Dickey. She contends, however, that the warrant, insofar as it was directed to apartment 102, the location of her arrest, was fatally defective in that the affidavit failed to establish probable cause to believe that any contraband was in apartment 102 and that the affidavit fails to comport with the so-called "two-prong test" of *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509].

Relying on dicta to be found in *Price* v. *Superior Court,* 1 Cal.3d 836 [83 Cal.Rptr. 369, 463 P.2d 721], appellant condemns the affidavit because it contains "hearsay on hearsay."

At the outset we are required to repeat some rather time worn rules applicable to the analysis of an affidavit in support of a search warrant, when that affidavit is attacked on appeal as not establishing probable cause for the issuance of the warrant.

■ A search warrant is validly issued when the affidavits upon which it is based contain *competent* evidence "sufficient to support the finding of the magistrate." (*People* v. *Scoma,* 71 Cal.2d 332, 336 [78 Cal.Rptr. 491, 455 P.2d 419].) ■ "In determining the sufficiency of an affidavit for the issuance of a search warrant the test of probable cause is approximately the same as that applicable to an arrest without a warrant, a commitment by a magistrate or an indictment by a grand jury [citations], namely, whether the facts contained in the affidavit are such as would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion of the guilt of the accused. [Citation.] While it is clear

that probable cause does not require as strong evidence as is needed to convict [citation], the exact quantum of evidence which will constitute probable cause must be judged in the light of the facts and circumstances of each case." (*Skelton* v. *Superior Court,* 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485].)

■ The magistrate's findings will be disturbed only if the affidavit fails as a matter of law to set forth sufficient *competent* evidence to support those findings. ■ It is not the function of the reviewing court to appraise and weigh the evidence presented in the affidavit. (*People* v. *Benjamin,* 71 Cal.2d 296, 302 [78 Cal.Rptr. 510, 455 P.2d 438]; *People* v. *Govea,* 235 Cal.App.2d 285, 297 [45 Cal.Rptr. 253].)

"Following *Aguilar,* [v. *Texas,* 378 U.S. 108] California courts have held that for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable." (*People* v. *Hamilton,* 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681]; *Price* v. *Superior Court,* 1 Cal.3d 836, 840-842 [83 Cal.Rptr. 369, 463 P.2d 721].)

Thus *Aguilar* provided a gloss on the fundamental principles by defining what is required in one area to meet the definition of *competent* evidence.

■ The rules governing the use of evidence at trial are not the rules which govern the issuance of a search warrant. Establishing probable cause for the issuance of a search warrant differs from proving the guilt of the accused not only in the quantum of evidence required but in the *method of proof.*

■ While hearsay may be *incompetent* and inadmissible in a trial " ' an affidavit may be based on hearsay information and need not reflect the direct personal observations of the affiant,' so long as the magistrate is 'informed of some of the underlying circumstances' supporting the affiant's conclusions and his belief that any informant involved . . . was "credible" or his information "reliable." ' " (*United States* v. *Ventresca,* 380 U.S. 102, 108 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741].)

The confidential informant who spoke to Deputy Sheriff Dickey was established to be reliable, in fact appellant does not urge either "prong" of

*Aguilar* as to him. It is apparent from the information he gave that he personally witnessed or experienced all of it. He observed "Steve" sell hashish and the statements attributed to Steve, the girl and the man in apartment 102 were all heard directly by him.

Appellant asks us to in effect ignore the total picture presented to Deputy Sheriff Dickey by the informant and Agent Scotland and examine only the statements concerning apartment 102 made by "Steve," the girl and the man in apartment 102. She also contends that these latter three people should themselves be treated as informants and evaluated in the light of *Aguilar.*

Such an analysis would impose a "hypertechnical, rather than a commonsense" interpretation of the factual matrix presented. (See *United States* v. *Ventresca, supra,* at pp. 109-110 [13 L.Ed.2d at pp. 689-690].)

In *Price* v. *Superior Court, supra,* our Supreme Court in finding an affidavit to be insufficient quoted from *Spinelli* v. *United States,* 393 U.S. 410, 416 [21 L.Ed.2d 637, 644, 89 S.Ct. 584]: "In the absence of a statement detailing the manner in which the information was gathered, it is especially important that the tip describe the accused's criminal activity in sufficient detail that the magistrate may know that he is relying on something more substantial than a casual rumor circulating in the underworld or an accusation based merely on an individual's general reputation."

The facts which led to a reversal in *Price* are clearly distinguishable from those with which we are dealing here. While it is true that Deputy Sheriff Dickey's recitation of what the informant told him is hearsay, the confidential informant and the information he gave here clearly meets the tests of *Aguilar, Price* and *Spinelli.* Thus taking the informant's information at face value it is readily apparent that "Steve," the prime suspect, was a dealer in narcotics with a base of operations at apartment 207 and that the unknown man and girl were his confederates.

The single narrow question remaining to be answered is whether the magistrate as a man of ordinary prudence and caution, upon hearing of the statements of the suspect "Steve," the girl and the man in the apartment, could entertain a strong suspicion that "Steve" also transacted business at apartment 102. In making this determination, while it could readily be argued that the three declarants spoke with personal knowledge, we find it unnecessary to engage in a technical analysis of whether these statements were or were not incompetent hearsay nor to apply the test of *Aguilar* to the declarants. The declarants were the very suspects who were the target of the investigation. ■ In other words we believe that the so called "two-prong" *Aguilar* test, if satisfied as to the primary con-

fidential informant, need not be projected to a declarant whose statements are recounted by the confidential informant if that declarant is a suspect and the focus of the investigation.

The critical considerations are simply (1) that the statements were made, (2) the circumstances under which they were uttered, and (3) the significance which a reasonable person would attach to them.

The three declarants who spoke to the confidential informant about apartment 102 were not in custody when they made the statements; nor were they aware that the informant was anything other than a potential customer. Their statements were not made for the selfish purpose of currying favor with law enforcement to mitigate the punishment of their own acts, or with the ulterior motive of causing the arrest of the defendant upon a false story.

In *People* v. *Williams,* 174 Cal.App.2d 175 [344 P.2d 45], an undercover officer making a purchase of narcotics from a third party was told by that party that defendant was a peddler. The court there held that the police could rely on that information because the person supplying the information did not know that the officer was an officer and that as far as he was concerned the officer "was just another person trying to 'make a buy'." (*People* v. *Williams, supra,* at p. 181; also see, *Ming* v. *Superior Court,* 13 Cal.App.3d 206 [91 Cal.Rptr. 206].) ■ Thus, armed with (1) the averment that the informant "personally" saw both the sale and the use of narcotics in apartment 207; (2) the statement of an undercover narcotics agent that narcotics had been used in apartment 207 the previous night; (3) the series of self-corroborating statements and actions concerning the possibility of sale of narcotics in apartment 102; and (4) "Steve's" statement that the informant should go to apartment 102 for the purchase of hashish instead of apartment 207, the affidavit presents a substantial basis from which to conclude that the two apartments were indeed being used in concert for the use and sale of narcotics.

## SUFFICIENCY OF THE EVIDENCE

This is another example of an all too often occurring situation. Trial courts, in an apparent effort to extend leniency, often ignore the more realistic and serious charge indicated by the evidence, convict the unappreciative suspect of a lesser charge only to have him take an appeal, with nothing to lose, on the grounds that elements of the lesser charge were not established—a case of looking the proverbial gift horse in the mouth.

The facts of this case would clearly have supported a charge of possession of marijuana. Found only to have violated section 11556 of the

Health and Safety Code appellant now contends that the evidence is insufficient to show that she knew narcotics were being used by the other persons present. We disagree. ▊ Appellant had been in the apartment since 11:30 p.m., which was nearly three hours prior to the execution of the warrant. One of the five people arrested in the apartment was found in the opinion of the arresting officer to be under the influence of an opiate. Several grams of hashish, wrapped in tin foil, in a plastic bag were in open view on a coffee table in the living room of the apartment. A small amount of hashish was found in appellant's purse. Pipes which had been used for smoking hashish were found in the apartment. The evidence was patently sufficient.

The order is affirmed.

Roth, P. J., and Fleming, J., concurred.