[No. F003546. Fifth Dist. May 13, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
DALE EDWARD LOVE, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

*Pursuant to California Rules of Court, rule 976.1, this opinion is certified for publication with the exception of part II.

**COUNSEL**

William Arthur Miller, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, W. Scott Thorpe and Krista Kmetz, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**FRANSON, Acting P. J.**—Appellant appeals from a judgment of conviction of possession of methamphetamine for sale. (Health & Saf. Code,

§ 11378.) He was admitted to three years' probation on various conditions, including county jail time. Appellant challenges the conviction on two grounds: (1) the trial court erred in denying his motion to suppress because the affidavit failed to show probable cause to support the search warrant, and (2) appellant's trial attorney was ineffective for not seeking discovery of the identity of the confidential informant's source of information. We reject both contentions and affirm the judgment.

FACTS

Agent James Johnson and other members of the Stanislaus County Drug Enforcement Unit (SCDEU) executed a search warrant at 808 Kerr Avenue in Modesto on May 27, 1983. Appellant answered the door and was given a copy of the warrant. The officers found methamphetamine, scales, bindles, a cutting agent and other contraband inside the residence. This evidence was the basis of the criminal charge filed against appellant.

The affidavit was drafted and signed May 20, 1983, by Modesto City Police Officer Bob Finley, who was present at the search and assigned as a narcotics detective with SCDEU. Finley stated he personally had observed the exterior of the residence located at 808 Kerr Avenue and described the house in some detail.

Finley had received information within 72 hours of May 20, 1983, from a confidential reliable informant referred to as "X." Finley alleged X had once informed agents of the Stanislaus County Drug Enforcement Unit that specific persons at specific locations were dealing in specific controlled substances. A search warrant issued on this information, and the specified substances were seized and suspects were arrested. On one other occasion, X told members of SCDEU that he could introduce an undercover agent to specific persons who were dealing with specific controlled substances in order to make a purchase. An SCDEU agent purchased controlled substances from the persons named by X. The substances seized were tested and on each occasion were found to be the controlled substance named by X; each of the cases was still pending litigation.

Finley also alleged that to his knowledge, X had never been convicted of a felony and was not under criminal investigation by law enforcement. X had never, to Finley's knowledge, provided SCDEU agents with false information. X was a former user of methamphetamine and was familiar with its appearance and usual manner of packaging for use and for sale. Finley believed it was necessary for X's personal safety to keep X's identity confidential, and X provided the following information on assurance that his identity would not be revealed.

X told Finley that X was with another individual, designated "Y." X told Finley that "Y does not know that X is an informant with any law enforcement agency." X said Y told him that Y could purchase "go fast" at 808 Kerr Avenue. X accompanied Y to the residence at that address, where Y asked X to wait outside while Y made the purchase. X saw Y enter the residence and later return with a clear plastic baggie containing an off-white powder which Y called "go fast." Y told X that he had purchased the "go fast" from "persons inside the residence," and showed the baggie to X; X examined the baggie and told Finley the substance was methamphetamine. X said that Y told him the "person inside the residence" said he had quantities of "go fast" for sale "anytime Y wanted to purchase."

Finley stated that in his experience, the description of the powder and baggie provided by X was consistent with methamphetamine and the usual manner of its packaging. Also, Finley was aware that "go fast" is a common street name for methamphetamine. Finley indicated it was necessary to keep the identity of Y confidential in order to insure X's safety.

Finally, Finley alleged the records of the Modesto Irrigation District "were checked" and revealed the utilities at 808 Kerr Avenue were in the name of Dale Love.

Based on the foregoing information, Finley requested authority to search the residence, grounds and outbuildings located at 808 Kerr Avenue, all persons residing at that residence, any vehicles registered to the residents, and any closed or locked containers on the premises for methamphetamine and paraphernalia associated with the use and sale of methamphetamine and for any documents identifying the occupants of the residence. A warrant was issued, as requested, by a judge of the superior court.

DISCUSSION

I.

*The affidavit supports the magistrate's finding of probable cause when viewed under the "totality of the circumstances" standard of the United States Supreme Court.*

In *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], the California Supreme Court ruled that Proposition 8 abrogated a defendant's right to object to and suppress evidence seized in violation of the California, but not the federal Constitution. (*Id.,* at pp. 885-889.) Accordingly, we must apply federal law to determine the sufficiency of an affidavit supporting a search warrant.

In *Illinois* v. *Gates* (1983) 462 U.S. 213 [76 L.Ed.2d 527, 103 S.Ct. 2317], the United States Supreme Court abandoned the "rigid" "two-pronged test" of *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509][1] and *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584] and substituted in its place the "totality of the circumstances" approach that "traditionally has informed probable cause determinations." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 238 [76 L.Ed.2d at p. 548, 103 S.Ct. at p. 2332].) Although the high court held that the *Aguilar-Spinelli* elements concerning the informant's "veracity," "reliability" and "basis of knowledge" are all highly relevant in the determination of probable cause, these elements should not be regarded as "independent requirements to be rigidly exacted in every case . . . ." (*Id.,* at p. 230 [76 L.Ed.2d at p. 543, 103 S.Ct. at pp. 2327-2328].) Instead, "[t]he task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a *fair probability* that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a 'substantial basis for . . . conclud[ing] that probable cause existed." (*Id.,* at pp. 238-239 [76 L.Ed.2d at p. 548, 103 S.Ct. 2332], italics added.)

*Illinois* v. *Gates* specifically reiterated the basic limits beyond which a magistrate may *not* go in finding probable cause: "A sworn statement of an affiant that 'he has cause to suspect and does believe that' [contraband] is located on certain premises will not do." (*Illinois* v. *Gates, supra,* 462 U.S. at p. 239 [76 L.Ed.2d at pp. 548-549, 103 S.Ct. at p. 2332, citing *Nathanson* v. *United States* (1933) 290 U.S. 41 [78 L.Ed. 159, 54 S.Ct. 11].) Nor will an "officer's statement that 'affiants have received reliable information from a credible person and believe' that heroin is stored in a home . . . ." (*Ibid.,* citing *Aguilar* v. *Texas, supra,* 378 U.S. 108.) "[A] mere conclusory statement that gives the magistrate virtually no basis at all for making a judgment regarding probable cause" is inadequate to support a warrant. (*Ibid.*) "But when we move beyond the 'bare bones' affidavits present in cases such as *Nathanson* and *Aguilar,* this area simply does not lend itself to a prescribed set of rules . . . ." (*Id.,* at p. 239 [76 L.Ed.2d at p. 549, 103 S.Ct. at pp. 2332-2333].) Finely tuned standards such as proof beyond

---

[1]The *Aguilar* test of the sufficiency of hearsay in an affidavit was frequently stated as follows: "(1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable." (*People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 L.Ed.2d 785, 454 P.2d 681].)

a reasonable doubt or by a preponderance of the evidence, useful in formal trials, have no place in the magistrate's decision. It is clear "that only the *probability,* and not a prima facie showing, of criminal activity is the standard of probable cause . . . ." (Italics added, *Spinelli* v. *United States, supra,* 393 U.S. at p. 419 [21 L.Ed.2d at p. 645, 89 S.Ct. at p. 590].)

*Gates* also quotes *Locke* v. *United States* (1813) 11 U.S. 339 [3 L.Ed. 364] where Chief Justice Marshall observed that "the term 'probable cause' according to its usual acceptation, means less than evidence which would justify condemnation . . . . It imports a seizure made under circumstances which *warrant suspicion.*" (*Id.,* at p. 348 [3 L.Ed. at p. 367], italics added.) The central teaching of the "probable cause" standard is: " 'In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.' " (*Illinois* v. *Gates, supra,* 462 U.S. at p. 231 [76 L.Ed.2d at p. 544, 103 S.Ct. at p. 2328, quoting *Brinegar* v. *United States* (1949) 338 U.S. 160, 176 [93 L.Ed. 1879, 1891, 69 S.Ct. 1302].) " 'The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers. Finally, the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.' " (*Ibid.,* quoting *United States* v. *Cortez* (1981) 449 U.S. 411, 418 [66 L.Ed.2d 621, 629, 101 S.Ct. 690].)

*Gates* also reminded reviewing courts that they should give "great deference" to a magistrate's determination of probable cause. To hold otherwise would engender uncertainty regarding the magistrate's determinations and would encourage law enforcement officers to forego obtaining a warrant.

Although *Gates* abandoned the *Aguilar-Spinelli* standard for determining probable cause, it did not abandon the fundamental rule that if hearsay declarations are used to establish probable cause, the affidavit must provide a "substantial basis" for crediting the hearsay declarations. (*Jones* v. *United States* (1960) 362 U.S. 257, 270 [4 L.Ed.2d 697, 707-708, 80 S.Ct. 725, 78 A.L.R.2d 233]; *United States* v. *Ventresca* (1965) 380 U.S. 102 [13 L.Ed.2d 684, 85 S.Ct. 741]; see also federal cases cited in *People* v. *Superior Court (Bingham)* (1979) 91 Cal.App.3d 463, 472-475 [154 Cal.Rptr. 157].) ▮ A chain is only as strong as its weakest link, so a "substantial basis" for crediting the hearsay statements must be provided for each level of hearsay, i.e., at the secondary source level as well as the primary source

level. As explained by Professor La Fave, "in the hearsay-upon-hearsay situation, as where an informant of established reliability tells police what someone else has told him, there is a need to establish veracity with respect to each person in the hearsay chain." (La Fave, Search and Seizure, A Treatise on the Fourth Amendment (1978) § 3.3, p. 530; see also *Price v. Superior Court* (1970) 1 Cal.3d 836, 841 [83 Cal.Rptr. 369, 463 P.2d 721]; *People v. Superior Court (Bingham)*, *supra,* 91 Cal.App.3d 463, 472-473; but see *In re Jean M.* (1971) 16 Cal.App.3d 96, 103-104 [93 Cal.Rptr. 679]; *People v. Christian* (1972) 27 Cal.App.3d 554, 560 [95 Cal.Rptr. 234], where participants in a crime were not tested like ordinary informants.)

The affidavit provides a substantial basis for believing Y's declarations to X. Y made the declarations and then took X to the house. While X waited outside, Y went in and came back out carrying methamphetamine. Although X did not search Y's person before he went in and could not see the actual transaction, Y's declaration that he bought the drugs in the house was supported by these events. These corroborative circumstances do not prove guilt but they do provide a substantial basis for Y's credibility and the overall probable cause determination.

X was a known confidential reliable informant who was knowledgeable and experienced in the purchase and sale of drugs. Several reasonable inferences may be drawn from this: first, when X stated that Y did not know that X was a police informant, the statement is credible because X would know better than anyone else who was aware of his police activity. Second, Y probably would not have shown him illegal drugs if Y had known he was a police informant. Common sense tells us that this would be the last thing that Y would do. While there obviously was a *possibility* that Y or perhaps Y and X together were conspiring to frame appellant by falsely accusing him of illegal drug activity, this possibility does not negate the "fair probability" that Y did purchase the drugs from inside appellant's apartment (*Illinois v. Gates, supra,* 462 U.S. at p. 238 [76 L.Ed.2d at p. 548, 103 S.Ct. at p. 2332]). In sum, under all of the circumstances, there is a ring of truth to Y's declarations that he purchased the drugs inside the house.

Y's conduct in showing the drugs to X upon exiting the house along with his statement that he had just purchased them inside the house also qualifies as a declaration against penal interest. (*United States v. Harris* (1971) 403 U.S. 573, 583-584 [29 L.Ed.2d 723, 734, 91 S.Ct. 2075].)[2] *Harris* notes

---

[2]The California Supreme Court has limited *Harris'* application when the informant is in custody and makes a declaration against penal interest as a way of avoiding criminal liability for greater crimes. (*People v. Campa* (1984) 36 Cal.3d 870, 881-882 [206 Cal.Rptr. 114, 686 P.2d 634].) But it has not rejected *Harris* altogether, and it is doubtful whether it could do so after *In re Lance W., supra,* 37 Cal.3d 873 recognized the abrogation of state law bases for the suppression of evidence.

that the declaration by the informant was plainly a declaration against interest since it could readily warrant a prosecution and could sustain a conviction against the informant himself. The critical fact is that the informant was known to the police. (*Ibid.*) In the present case, an inference arises that Officer Finley knew Y's identity because he alleged in his affidavit that it was necessary to keep Y's identity confidential in order to assure X's safety. Furthermore, as explained in La Fave, "[i]t should not be assumed . . . that an admission against penal interest can be used to establish reliability only when that admission is made directly to a law enforcement officer . . . ." (La Fave, Search and Seizure, *op. cit. supra,* at p. 530.) ■ In the hearsay upon hearsay situation, as where an informant of established reliability (in this case, X) tells the police what someone else (Y) has told him, the veracity of the secondary source can be established by showing that he made admissions against penal interests. "Indeed, as a general proposition there is more reason to rely upon such admissions than admissions made directly to the police, for in the latter situation there is always the chance that the informer is a stoolie who perceives he can admit to criminality without significant risk." (La Fave, Search and Seizure, *op. cit. supra,* at p. 530 citing *Comi* v. *State* (1975) 26 Md.App. 511 [338 A.2d 918].)

■ Under all the circumstances, Y's declarations to X were reliable. First, he told X that he could buy "go fast" at appellant's home. If nothing more happened, this would not justify a search. But then he took X with him to the premises, went inside, showed the drugs to X when he came outside and restated his claim that he bought them inside. Showing the drugs to X was against Y's penal interest and was not done to exculpate himself from a greater crime or to divert police interest. (Contrast *People* v. *Campa, supra,* 36 Cal.3d 870, 882-883.) X's observations during the process lend credence to Y's declaration. X's known reliability provides an adequate chain of communication to the affiant, presenting the magistrate with a substantial basis for decision.

This highly believable chain of events gave the magistrate a substantial independent basis for finding there was probable cause to believe that methamphetamine would be found in the house. Although someone might disagree, and it is possible that X, Y or even Officer Finley did not tell the truth, the affidavit hangs together and supports the common sense determination made by the magistrate. That is all that is required to uphold the warrant. (*Illinois* v. *Gates, supra,* 462 U.S. 213.) We must defer to the issuing magistrate's determination of this issue whenever there is a substantial basis for his decision. (*Ibid.*)[3]

---

[3]Since we conclude that there was a substantial basis for the issuing magistrate's determination of probable cause, we need not consider the officer's good faith reliance on the warrant. (*United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405].)

## II.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

The judgment is affirmed.

Hamlin, J., concurred.

**HANSON (P. D.), J.**—I respectfully dissent. The affidavit, described in the majority opinion, is insufficient as a matter of law to establish probable cause for the search because it rests in crucial part on hearsay statements of the anonymous declarant "Y," whose information is not shown to be reliable and is uncorroborated. Further, the affidavit is so fundamentally deficient in its dependence upon unsupported assumptions that the good faith exception for reasonable reliance upon a warrant (*United States* v. *Leon* (1984) 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405] cannot save the products of the illegal search.

The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the person or things to be seized."[1] The warrant clause protects the security and privacy of individuals against unjustified intrusion by requiring that inferences sustaining a finding of probable cause[2] "be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." (*Johnson* v. *United States* (1948) 333 U.S. 10, 14 [92 L.Ed.2d 436, 440, 68 S.Ct. 437]; *Illinois* v. *Gates* (1983) 462 U.S. 213, 240 [76 L.Ed.2d 527, 549, 103 S.Ct. 2317, 2333].) It is not required that an affidavit in support of a search warrant reflect only the personal observations of the affiant; however, in order for the magistrate

---

*See footnote on page 104, *ante*.

[1]The parallel provision of the California Constitution (art. I, § 13) provides: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable seizures and searches may not be violated; and a warrant may not issue except on probable cause, supported by oath or affirmation, particularly describing the place to be searched and the persons and things to be seized."

Under *In re Lance W.* (1985) 37 Cal.3d 873 [210 Cal.Rptr. 631, 694 P.2d 744], we are bound to interpret this provision as creating no broader grounds for exclusion of evidence than does the federal Constitution.

[2]"Probable cause exists where 'the facts and circumstances within . . . [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief' " (*Brinegar* v. *United States* (1949) 338 U.S. 160, 175-176 [93 L.Ed. 1879, 1890, 69 S.Ct. 1302]) that the evidence sought is in the place to be searched.

to perform his constitutional function, the affidavit must present a "substantial basis" for crediting hearsay information relied upon to establish probable cause. (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 241-242 [76 L.Ed.2d at p. 550, 103 S.Ct. at p. 2334]; *Jones* v. *United States* (1960) 362 U.S. 257, 269 [4 L.Ed.2d 697, 707, 80 S.Ct. 725, 78 A.L.R.2d 233].)

Studying the affidavit, it is apparent affiant Finley obtained *all* of the information tending to support his belief that controlled substances were on the premises of 808 Kerr Avenue from "X," who in turn had obtained the critical information from Y. This is not a case in which the police undertook an investigation and discovered evidence independently corroborating the hearsay allegations; here, the *entire* probable cause determination rests upon the unsworn statements of the unidentified informants concerning matters not witnessed by the affiant. Thus, the determinative question is whether the affidavit provides a substantial basis for crediting the hearsay. I cannot agree with the majority's conclusion that it does.

In *Illinois* v. *Gates, supra,* 462 U.S. 213, 238 [76 L.Ed.2d 527, 548, 103 S.Ct. 2317, 2331], the court expressly abandoned the two-pronged *Aguilar-Spinelli*[3] test for evaluating informants' hearsay in search warrant affidavits in favor of a common sense, "totality of the circumstances" approach. The court emphasized that while the "reliability" or "veracity," and "basis of knowledge" of an informant are still highly relevant, these factors are not to be considered independent requirements.

"Instead, they are better understood as relevant considerations in the totality of circumstances analysis that traditionally has guided probable cause determinations: a deficiency in one may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." (462 U.S. at p. 233 [76 L.Ed.2d at p. 545, 103 S.Ct. at p. 2329]; see also, *Massachusetts* v. *Upton* (1984) 466 U.S. 727 [80 L.Ed.2d 721, 104 S.Ct. 2085].)

Applying this standard, the court in *Gates* held sufficient an affidavit based upon an anonymous informant's tip which was partially corroborated by police investigation. The court considered significant the detailed and predictive information contained in the tip, which was substantially corroborated by police observations. Rejecting an argument that police verification must concern criminal and not merely innocent activities consistent with the tip, the court found it enough that the corroboration reduced the likelihood of a reckless or prevaricating tale. (*Gates, supra,* 462 U.S. at pp. 244-245

---

[3]*Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]; *Spinelli* v. *United States* (1969) 393 U.S. 410 [21 L.Ed.2d 637, 89 S.Ct. 584].

[76 L.Ed.2d at p. 552, 103 S.Ct. at p. 2335].) The affidavit in this case shows no comparable independent corroboration of the hearsay or other indicia of reliability.

Had the affidavit alleged the tested informer X personally observed a purchase of methamphetamine from a resident of 808 Kerr Avenue and reported his/her observations to Finley, such factual information would have presented a substantial basis for crediting the hearsay. However, X remained outside. He/she did not actually witness any transaction. The claim that the drugs were purchased inside comes only from statements of Y. X believed Y. There is no blanket rule that such double hearsay is insufficient to support a search warrant; rather, as with other hearsay, the value of the information depends upon its quality and persuasiveness. (*People* v. *Superior Court* (*Bingham*) (1979) 91 Cal.App.3d 463, 473-474 [154 Cal.Rptr. 157], and federal cases there cited.) As Y clearly is neither a citizen informant nor a tested police informer, his/her information is inherently suspect. The majority relies upon two factors to provide a basis for believing the statements of the unreliable Y: (1) the corroborative effect of X's observations and (2) Y's admissions of criminal involvement. However, upon examination, both theories of reliability prove illusory.

Insofar as the affidavit shows, the entire episode reported by X was arranged by Y for motives unknown. Yet, the only corroboration of Y's statements is found in the sequence of events observed by X: Y claimed he/she could purchase "'go fast'" at the named location; he/she went into the house and upon returning showed X drugs which Y said he/she had purchased inside. Under these circumstances, the weight of any inference that the drugs were obtained in the house is inextricably connected with the veracity of Y's statements—a matter upon which the affidavit sheds no factual light.

The affidavit relates neither the circumstances surrounding the meeting of X and Y nor why Y would want to show X where "go fast" could be purchased. The affidavit alleges only X's *conclusion* that Y did not know X was working for any law enforcement agency. Absent some information about the underlying circumstances of the meeting between X and Y, and X's reason for accompanying Y, such a statement of belief can be given no weight. Obviously, X was not conducting a controlled buy; the affidavit does not allege a search of Y before he/she went into the residence, or any other factual grounds for inferring Y did not possess drugs at the time of entry. Indeed, there is no evidence X offered to buy, bought, or received any of the drugs. If Y was not acting as a go-between to purchase drugs for X, we can only speculate what Y's motivations were in revealing his/her ostensible source to X, and there is little reason to assume his/her veracity

in "'point[ing] the finger of suspicion'" at the residents of the particular house. Here, the magistrate necessarily accepted *X's* assessment of *Y's* credibility, because the affidavit contained insufficient background information to enable the magistrate independently to reach an informed evaluation of the reliability of Y's information.[4]

The same lack of background information makes it impossible for Y's statements to be considered reliable as declarations against penal interest. Indeed, it appears Y did not consider that he/she was risking any penal consequences or opprobrium from his/her disclosures, but we are not told why. On the one hand, Y's statements admitting involvement with illegal drugs were not made in the context of reporting criminal activity to police, as were the informant's statements in *United States* v. *Harris* (1971) 403 U.S. 573, 583-584 [29 L.Ed.2d 723, 734, 91 S.Ct. 2075].[5] On the other hand, the affidavit provides no basis other than X's unsworn conclusion for the assumption Y did not know X was an informer working for law enforcement. No information is provided about how X met Y or the nature of their relationship. The information provided—that X is a former user, with no

---

[4]I disagree with the majority's position that X's conclusions provide a basis for crediting Y's statements in the absence of any of the underlying facts which might support X's belief. Moreover, the majority's tacit assumption that because X has experience in the drug world his/her conclusions are probably true, is unwarranted and dangerous.

In *Jones* v. *United States, supra,* 362 U.S. 257, 269 [4 L.Ed.2d 697, 707], the Supreme Court commented: "We held in *Nathanson* v. *United States,* 290 U.S. 41, that an affidavit does not establish probable cause which merely states the affiant's belief that there is cause to search, without stating facts upon which that belief is based. *A fortiori* this is true of an affidavit which states only the belief of one not the affiant." Although *Gates* clearly mandates a less technical approach to evaluation of search warrant affidavits than that developed in *Aguilar* and *Spinelli,* I find nothing in the *Gates* opinion shifting the magistrate's constitutional responsibility for drawing reasonable inferences from the facts to the policeman, or, as here, to an unidentified "confidential reliable" informer.

Because the validity of unsupported conclusions and assumptions cannot be independently assessed, they may mask a multitude of circumstances which might lead the magistrate (or the police) to distrust the accusation. The implications of official reliance upon conclusional statements of individuals such as X are particularly disturbing. From the affidavit it appears only that X, a former methamphetamine user, is a sort of informer-entrepreneur, motivated by some perceived self-interest, such as money, power, vengeance or a combination of such factors, acting without police direction or control. Neither sworn to uphold the law, nor trained in techniques for obtaining reliable evidence, such an individual, if unchecked even by the requirement to reveal contextual information about a tip, may be expected to utilize unlawful or unreliable methods or manipulate the situation to serve his/her own needs. Furthermore, if informer activities can be thus insulated from scrutiny, police will have little incentive to supervise. Judicial acceptance of an informer's bare conclusions can only encourage law enforcement to abandon investigative responsibility to those whose actions are unverifiable and unreviewable.

[5]Contrary to the suggestion in the majority's opinion, the affidavit provides no reasonable ground to assume that Y is known to police. The affidavit merely recites affiant's belief that it is necessary to keep Y's identity confidential in order not to disclose the identity of X. From affiant's failure to provide even the most general information about Y, it can be inferred X withheld the facts of Y's identity and circumstances from the officer.

mention that X offered to buy from Y, or that X turned over any drugs to Finley—suggests X was not involved as a purchaser. We have no inkling what induced Y's course of conduct. Without knowing any facts about how X obtained Y's cooperation, it is pure speculation to assume Y had no reason to misrepresent what he/she was doing. Under the circumstances, the credibility of Y's accusation is not enhanced by his/her admitted criminality. (See *People* v. *Campa* (1984) 36 Cal.3d 870, 881-884 [206 Cal.Rptr. 114, 686 P.2d 634].)

Our duty as a reviewing court is to ensure that the magistrate had a " 'substantial basis for . . . conclud[ing]' that probable cause existed." (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 238-239 [76 L.Ed.2d at p. 548, 103 S.Ct. at p. 2332]; *United States* v. *Hendricks* (9th Cir. 1984) 743 F.2d 653, 654, cert. den. — U.S. — [84 L.Ed.2d 382, 105 S.Ct. 1362].) Here, there was no such basis. Reading the affidavit in a common sense manner, and giving its allegations all the weight to which they are logically entitled, the total basis for the probable cause determination rests upon the declarations of the anonymous Y. As noted in *People* v. *Kershaw* (1983) 147 Cal.App.3d 750, 757 [195 Cal.Rptr. 311], "decisions of California courts and the United States Supreme Court appear to be unanimous in rejecting anonymous tips, standing alone, as the basis for a search warrant. (See, e.g., *People* v. *Dumas* (1973) 9 Cal.3d 871, 884 . . .; *Dunn* v. *Municipal Court* (1963) 220 Cal.App.2d 858, 871 . . .; *Adams* v. *Williams* (1972) 407 U.S. 143, 146-147 . . . .)" (See also *Illinois* v. *Gates, supra,* 462 U.S. 213, 227 [76 L.Ed.2d 527, 541-542, 103 S.Ct. 2317, 2326].) Because the affidavit fails to provide any substantial basis for crediting the double hearsay, it is constitutionally insufficient to support issuance of the warrant.[6]

In light of this conclusion, it is necessary to consider the effect of *United States* v. *Leon, supra,* 468 U.S. 897 [82 L.Ed.2d 677, 104 S.Ct. 3405]. The Supreme Court in *Leon* created a "good faith exception" to the exclusionary rule. Under *Leon,* evidence need not be suppressed when it has been seized pursuant to execution of a search warrant, which is valid on its face and on which the police in good faith reasonably relied, even though the warrant is subsequently ruled invalid. The essential prerequisite to application of the good faith exception is objective reasonableness; in order to act with objective good faith, officers must "have a reasonable knowledge of what the law prohibits." (*Id.,* at p. —, fn. 20 [82 L.Ed.2d at p. 696, 104 S.Ct. at p. 3420].) The court noted that suppression would remain appropriate where the affidavit is " 'so lacking in indicia of probable cause as

---

[6]I take exception to the use by the majority of the phrase "ring of truth" (maj. opn. p. 110). The phrase obscures rather than elucidates the task of the magistrate. Impressionistic conclusions have not replaced articulable facts in the determination of probable cause.

to render official belief in its existence entirely unreasonable.' " (*Id.*, at p. — [82 L.Ed.2d at p. 699, 104 S.Ct. at p. 3422].) However, the majority concluded that where the police, acting reasonably in good faith, have obtained a warrant and acted within its scope, suppression of the resulting evidence is not justified because it will not serve the deterrent purpose of the exclusionary rule. (*Id.*, at p. — [82 L.Ed.2d at p. 696, 104 S.Ct. at pp. 3419-3420]; see also *Massachusetts* v. *Sheppard* (1984) 468 U.S. 981 [82 L.Ed.2d 737, 104 S.Ct. 3424].)

The police conduct in this case fares no better under *Leon* than under *Gates* because on its face the affidavit provides no reasonable basis for believing the hearsay statements of Y. Officer Finley, who drafted the affidavit, had received special training in the investigation of drugs; he was a narcotics detective assigned to a drug enforcement unit. He also was present at the execution of the warrant and search of the residence. Finley obviously knew that no information in the affidavit supported the reliability of Y or corroborated Y's disclosures to X.

The Supreme Court indicated in *Leon* that the exclusionary rule would still apply in cases involving a search warrant if the officers executing the warrant "could not have harbored an objectively reasonable belief in the existence of probable cause." The information from X by itself is of course insufficient to provide probable cause; the information from Y contains not a shred of indicia of reliability; and there is no corroboration by independent police investigation of any fact except the existence of a residence at the named address. Reliance upon this affidavit under the objective test is " 'entirely unreasonable.' " No reasonably well-trained officer could fail to recognize the insufficiency of such an affidavit, "[n]or would an officer manifest objective good faith in relying on a warrant based on an affidavit 'so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable.' " (*United States* v. *Leon, supra,* 468 U.S. 897 [82 L.Ed.2d at p. 699, 104 S.Ct. at p. 3422].) Under the circumstances of this case, the unsupported hearsay basis for the search not only is insufficient under *Gates,* but also is insufficient to support the good faith exception of *Leon.*

Although in close cases reasonable minds may differ whether the "totality of the circumstances" demonstrates a "fair probability" evidence of crime will be found in a specified place (*Illinois* v. *Gates, supra,* 462 U.S. at pp. 230-231 [76 L.Ed.2d at pp. 543-544, 103 S.Ct. at p. 2328]), ultimately the determination where the line should be drawn in a particular case must be guided by the policies underlying the Fourth Amendment. Here, the nature and substance of the information provided in the affidavit is far too limited to justify governmental intrusion into a person's home.

This assessment is not a technical one, and should not discourage conscientious officers from resort to the warrant process. Rather, responsible members of law enforcement must be aware of the necessity for some supporting information or independent corroboration where an unsupervised informer relies upon information from an undisclosed third party.

I would reverse the judgment.

Appellant's petition for review by the Supreme Court was denied July 18, 1985.