[Crim. No. 21499. Second Dist., Div. One. Aug. 30, 1972.]

THE PEOPLE, Plaintiff and Respondent, v.
PERRY PEPPER CHRISTIAN et al., Defendants and Appellants.

## COUNSEL

Rentzer, Segall & Gilbert and Robert D. Rentzer for Defendants and Appellants.

Evelle J. Younger, Attorney General, Edward A. Hinz, Jr., Chief Assistant Attorney General, William E. James, Assistant Attorney General, James H. Kline and Gaye W. Herrington, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—These are appeals by codefendants from judgments convicting them of possession of amphetamine in violation of Health and Safety Code section 11910. The judgments were entered on pleas of guilty after denial of appellants' motion to suppress evidence pursuant to Penal Code section 1538.5. We affirm the judgments.

On July 21, 1971, a magistrate of the Los Angeles Judicial District issued a warrant to search, among others, the premises at 1743 Van Horne Lane, Redondo Beach, California, for narcotics. The affidavit in support of the search warrant is executed by Sergeant R. D. Wetzel of the Los Angeles Police Department. It recites that on July 1, 1971, Wetzel received information from an untested, confidential informant that he had, within the past week, observed a male Caucasian, 5 feet 9 inches in height, weighing 145 pounds, and named "Sonny" selling kilos of marijuana. Wetzel identified Sonny as Lloyd Anthony Landry by a check of police records. He discovered that in April of 1971, Sonny had offered to introduce another officer to a connection to purchase heroin.

On July 7, Wetzel met with Sonny who stated: "I can get you 100 kilos of marijuana for $10,000.00. You get the money together, show it to me, and I'll get the marijuana. The grass is not commercial, it's grade-A stuff." Later, on July 7, Wetzel met Sonny and showed him $10,000. After making a telephone call, Sonny said, "My man said that he has 300 cans of grass at 3 pounds each. I can get it all for you tomorrow. I don't know how much it will cost yet." It was agreed Wetzel was to call Sonny the next day. On July 8, Wetzel called Sonny and was told that the sale of 300 cans could not then be consummated.

On July 9, Wetzel again met Sonny who stated that the person "he deals with" is named "Elliott" and that "he has good grass and can be

trusted." In the next 10 days, Wetzel had several conversations with Sonny. On July 19, Sonny said that his connection could deliver 50 kilos of marijuana that night. Wetzel was to meet Sonny at the New Harvard Restaurant at 8th and Harvard at 6:30 p.m. Wetzel met Sonny as planned. Sonny took him to a 1966 black Ford Mustang and showed him a kilo of marijuana in the trunk and a slab of hashish hidden under the dash. Wetzel followed Sonny to 8809 McConnell Avenue where he was introduced to "Lee." Lee said that when he saw the money he would go to get the marijuana and "bring it back." Wetzel and Lee went to Wetzel's car where Wetzel showed Lee the cash. Lee left 8809 McConnell in a blue Volkswagen van, license numbr DMC 239.

The affidavit, in a critical portion which is at issue in the appeal at bench, continues: "Lee left the location and was followed to 1743 Van Horne, Redondo Beach. Lee was observed to enter this location. Approx. 15 minutes later, two male Caucasians left the location carrying a large package, approx. 3 feet long by 10 inches deep by 12 inches wide and a smaller package, wrapped in brown paper. These persons placed the two packages in the trunk of a white possible Oldsmobile and left the location. Another male Caucasian got into a 1967 black over white Austin Healey, license UUE 673 and followed the above Oldsmobile for a short distance. Your affiant's fellow officers lost the Olds at this time. The Austin Healey returned to 1743 Van Horne."

The affidavit continues that Wetzel returned to 8809 McConnell about 15 minutes later and was met by Sonny. Sonny stated that he had received a phone call from Lee and that Lee stated that his connection had already sold 15 of the 50 kilos but "did indicate that there were still approx. 35 kilos at the original location (1741 Van Horne, Redondo Beach [sic]."

A search pursuant to the warrant issued on the basis of the affidavit disclosed contraband. Appellant Christian was charged with possession of marijuana and appellant Thomas was charged with possession of marijuana, possession of amphetamine, and possession of secobarbital. Appellants moved to suppress evidence of the contraband. At the outset of the hearing on the motion to suppress, the attorney for appellants stated: "For the purpose of proceeding, so that we might do so without unnecessary testimony, counsel and I have agreed to stipulate that the evidence offered against these defendants at the preliminary hearing, and that the evidence which remains against them for the purposes of trial, was contraband obtained from the location of 1745 [sic] Van Horne Street in Redondo Beach, pursuant to search warrant issued upon affidavit of Sergeant R. D. Wetzel, . . . which affidavit will be the subject of inquiry in this pro-

ceeding." The prosecutor did not state he agreed to the stipulation. He replied, "[T]he issue is whether or not [the] search warrant was issued upon a valid affidavit." Counsel for appellants responded, "That is correct. . . ."

The search warrant was received in evidence. Appellants called Sergeant Wetzel and established by his testimony that he did not personally observe Lee go to "1745 [*sic*] Van Horne, Redondo Beach" and did not personally see him enter that location or the persons exiting from it carrying the two packages. Over appellants' objection, the trial court permitted testimony that the observations at 1743 Van Horne were those of Wetzel's fellow officers who had reported on them by radio as they were made and that Wetzel intended to act as a "spokesman" for the other officers in using the language he did in his affidavit.

The trial court denied the motion to suppress. In an apparent plea bargain, a count charging possession of amphetamine was added to the information against appellant Christian. Both appellants entered pleas of guilty to that offense and the remaining counts were dismissed. On this appeal,[1] appellants contend: (1) the affidavit in support of the search warrant is deficient to establish probable cause to search the Van Horne location when considered in light of the testimony of Sergeant Wetzel adduced by the defense; and (2) the trial court erred in permitting testimony by Wetzel to establish the reports to him of observations made by his fellow officers at the scene and the intent of the language used. We conclude that the trial court did not err in denying the motion to suppress evidence.

We note at the outset that the testimony of the defense, viewed technically, does not traverse the search warrant good on its face. The questions asked by the defense of Sergeant Wetzel concern 1745 Van Horne whereas the warrant concerns a search of 1743 Van Horn. What Sergeant Wetzel failed personally to observe at a location other than the one searched is immaterial. The Attorney General, however, has not asserted the matter, thus conceding the validity of the issue raised by appellants.[2] We, therefore, also ignore the discrepancy in address.

---

[1]It appears that the only issue bearing on appellants' guilt may well have been the legality of the search. If such were the case, the prosecution could have avoided this appeal by requiring a recital of that fact in the plea bargain and obtaining an intelligent waiver of the right to appeal as a part of it.

[2]There is an indication in respondent's brief that the Attorney General has not examined the warrant or affidavit but has relied upon their characterization in appellants' opening brief and upon excerpts not specifying the "1743" address in the record of trial.

Treating the testimony of lack of observation by Sergeant Wetzel of Lee's activities as pertaining to the premises searched, we nevertheless conclude that the affidavit adequately supports the search warrant. The test is whether "the affidavit avers competent evidence sufficient to lead a reasonably prudent man to believe that there is a basis for the search." (*People* v. *Senkir,* 26 Cal.App.3d 411, 416 [103 Cal.Rptr. 138].)

"Under section 1538.5, subdivision (i), of the Penal Code, a defendant is entitled to a hearing de novo in the superior court with respect to the adequacy of a search warrant. . . . However, the superior court is required, even at such a hearing, to give a common-sense interpretation to the affidavit on which the warrant was based." (*People* v. *Superior Court* [*Johnson*], 6 Cal.3d 704, 710-711 [100 Cal.Rptr. 319, 493 P.2d 1183].)[3]

Here the affidavit on its face discloses competent evidence in the form of Sergeant Wetzel's undercover dealings with a supplier of narcotics that would lead a reasonably prudent man to believe that 35 kilos of marijuana were located at the Van Horne premises. Appellants contend, however, that certain of those facts are misleadingly stated in the affidavit. They argue that from the four corners of the affidavit it appears that Sergeant Wetzel personally observed activity of Lee and others at the Van Horne Street address whereas in fact such was not the case. Appellants' construction is a reasonable one from the terms of the affidavit. It is also possible to give another interpretation to the critical portion of the affidavit, i.e., that the reference to fellow officers while following the language of the observations of the activities at the Van Horne premises qualifies the statement of those observations.

If we adopt appellants' construction of the affidavit, there remains probable cause for the search. The inadvertent misstatement resulting from that construction requires only that the misstated language be disregarded and does not require that the rest of the affidavit be ignored.[4] (*People* v. *Buchanan,* 26 Cal.App.3d 274, 285-286 [103 Cal.Rptr. 66]; see also *Rugendorf* v. *United States,* 376 U.S. 528, 531-532 [11 L.Ed.2d 887, 890-891, 84 S.Ct. 825]; *Lockridge* v. *Superior Court,* 275 Cal.App.2d 612,

---

[3]The question of the vulnerability of an affidavit valid on its face to attack by a showing that its averments are untrue is still open in California. Our Supreme Court has granted hearing in *Theodor* v. *Superior Court, Orange County* (Cal.App.) 98 Cal.Rptr. 486, in which the Court of Appeal held such an attack was neither statutorily authorized or constitutionally compelled absent a claim of perjury. The court has not yet decided *Theodor.* To avoid delay in disposition of the matter at bench, we treat it on the merits.

[4]We recognize that there may be circumstances in which incorrect material averments in the affidavit cast doubt on the remaining averments, in a fashion that may not be cured by merely excising the offending sections. Such was not the circumstance in the case at bench.

622 [80 Cal.Rptr. 223].) If the statements in the affidavit concerning the observation of activities at the Van Horne address are disregarded, there remains Sonny's statement to Sergeant Wetzel that the 35 kilos of marijuana were there. ■ Appellants argue that Sonny's statement is valueless because it fails to meet the two-pronged test of *Aguilar* v. *Texas,* 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509]. The *Aguilar* requirements of factual showing of reliability of the informant and his personal knowledge of the facts of probable cause apply, however, only where probable cause is based upon information from an informer. Here Sonny was not an informer, one who acts as a tipster of crime. He was an actual participant in a transaction in contraband unknowingly dealing with an undercover officer rather than a customer. His statements concerning the location of the contraband are, if anything, entitled to more weight than those of a tipster, satisfying *Aguilar's* two-pronged test. (See *United States* v. *Harris,* 403 U.S. 573 [29 L.Ed.2d 723, 91 S.Ct. 2075].)

There is, of course, an ambiguity in Sonny's statement of the location of the marijuana. He referred to 1741 and not 1743 Van Horne in addition to stating that the contraband was at the "original location." Appellants did not raise the ambiguity in the trial court. As the respondent has ignored the discrepancy in address that would defeat appellants' attack on appeal, so also did appellants ignore the other discrepancy in the trial court. They seemingly are satisfied that in all its parts the affidavit is referring to the premises actually searched. Under those circumstances, the ambiguity is not helpful to appellants in this appeal.

■ An alternative basis sustains the trial court's determination that the search warrant is valid. No decision we have found has squarely faced the question of the extent of evidence that may be used to rehabilitate probable cause to search after evidence at a hearing to traverse a search warrant has rebutted key portions of the affidavit in support of it. (See *People* v. *Buchanan,* 26 Cal.App.3d 274 [103 Cal.Rptr. 66].) We do not reach the full ambit of that issue here. Rather, we are concerned with the prosecution's right to rebut evidence adduced by the defense which establishes that if one possible construction of the affidavit is used, the affidavit is inaccurate. We conclude that: (1) the prosecution has a right to produce evidence of the intended meaning of words used in the affidavit if the meaning asserted is consistent with one to which the affidavit is reasonably susceptible even if the interpretation asserted by the defense is the more likely one from the four corners of the affidavit alone; and (2) having produced evidence of that meaning the prosecution is entitled to introduce testimony to counter defense evidence leading to the possible inference that the words used in their intended sense are untrue. To adopt

any other rule is to follow the hypertechnical approach to the determination of the validity of search warrants which has been condemned by both the United States and California Supreme Courts.

We recognize that in adopting the principle of the admissibility of rehabilitative evidence, which we here apply, we are choosing between inherently conflicting policy considerations. ■ The purpose of appellate review of the sufficiency of the affidavit to support the search warrant is to insure that the affidavit supplies facts of cause to search so that the magistrate issuing the warrant decides upon the existence of cause with judicial detachment and does not act as a rubber stamp. (*Halpin* v. *Superior Court,* 6 Cal.3d 885, 890 [101 Cal.Rptr. 375, 495 P.2d 1295]; *People* v. *Superior Court (Johnson),* 6 Cal.3d 704 [100 Cal.Rptr. 319, 493 P.2d 1183]; *United States* v. *Ventresca,* 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741]; *United States* v. *Harris,* 403 U.S. 573 [29 L.Ed.2d 723, 91 S.Ct. 2075].) Consideration by another court of evidence sustaining probable cause that was not before the magistrate detracts from that purpose. Conversely, it is the purpose of the rule which excludes illegally obtained evidence to deter illegal police conduct, not deficient police draftsmanship in the preparation of affidavits. (See Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence,* 84 Harv.L.Rev. 825, 831.) There is also a strong policy encouraging search by warrant rather than on another permissible basis. (*United States* v. *Ventresca, supra,* 380 U.S. 102, 108-109.) If the reviewing judiciary treats the affidavit too strictly, the result reached tends not to serve the purpose of the exclusionary rule and to encourage warrantless searches. That consideration dictates that the normal presumption of correctness of the magistrate's determination be applied where a possible construction of the affidavit supports the determination. ■ That consideration also dictates that, where the defendant traverses the warrant contending that evidence establishes the affidavit to be untrue if read as asserted by him, the prosecution be permitted to rehabilitate the warrant with evidence establishing a different meaning to which the language of the affidavit is also reasonably susceptible and by evidence showing that the affidavit so construed is not materially inaccurate.[5]

We thus conclude that the affidavit in support of the search warrant here is adequate on its face and that the trial court did not err in receiving

---

[5]The affidavit read as contended by the prosecution must, of course, be sufficient on its face to establish probable cause. The rehabilitative evidence of operative facts as opposed to meaning of words used in the affidavit is material only to the extent that it rebuts defense evidence tending to show that the averments of operative fact in the affidavit as so construed are inaccurate.

the prosecution evidence countering that produced by the defense to traverse the warrant.

The judgments are affirmed.

Lillie, Acting P. J., and Clark, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied October 25, 1972. Peters, J., was of the opinion that the petition should be granted.