[Civ. No. 4983. Fifth Dist. Oct. 15, 1979.]

DUANE MICHAEL CALIGARI, Petitioner, v.
THE SUPERIOR COURT OF SAN LUIS OBISPO COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Reed C. Holcomb for Petitioner.

No appearance for Respondent.

George Deukmejian, Attorney General, and Willard F. Jones, Deputy Attorney General, for Real Party in Interest.

OPINION

ZENOVICH, J.—In an original proceeding before this court, petitioner Duane M. Caligari seeks a writ of prohibition and/or mandate to order the Superior Court of San Luis Obispo County to suppress certain evidence in a pending action in that court, and to order dismissal of said action.

Petitioner was charged with possession of cocaine for sale (Health & Saf. Code, § 11351). Petitioner's motion under Penal Code section 1538.5 for suppression of evidence seized in a search pursuant to a warrant was heard in conjunction with his preliminary hearing and denied.

After being held to answer in superior court, petitioner renewed his motion and the motion was denied following a hearing. Trial date was set. This court issued an order staying the trial pending the determination of this petition.

The affiant, San Luis Obispo Police Officer Dean Treanor, stated he had met with a confidential informant within the week prior to his affidavit. This informant was a private citizen, with no criminal record known to Treanor, who was employed as a private security agent.

Informant met Treanor in San Luis Obispo and Treanor searched informant and his vehicle for money and contraband and found none. Treanor then gave informant funds for the purchase of controlled substances from a suspected seller.

Informant then drove his car to another location in San Luis Obispo while under surveillance by Treanor. Another subject, hereinafter referred to as declarant, got into informant's vehicle.

Treanor followed informant and declarant to a location and saw declarant get out of the car. Treanor followed declarant on foot and heard footsteps apparently ascending to the apartment described in the search warrant. Treanor saw declarant emerge from the apartment a short time later and return to informant's vehicle. Treanor observed informant and declarant apparently looking down at something between them. Treanor then followed informant's vehicle and observed declarant get out of a car. A short time later, and while informant had been under constant surveillance, informant met with Treanor and gave Treanor a quantity of a suspected controlled substance; later tests confirmed that it was a controlled substance.

Informant also related to Treanor his conversations with declarant. According to informant, declarant said he had to get cocaine from his supplier and directed informant to the Story-Sandercock area. After declarant had exited the car and returned a short time later, declarant gave informant the substance which later proved to be cocaine in exchange for the funds provided by Treanor.

Using the above facts as set forth in Treanor's affidavit, the magistrate issued a search warrant for the search and seizure of cocaine and paraphernalia for the packaging of cocaine for sale, and other evidence of possession of cocaine for sale which was in the apartment Treanor had observed declarant leave during his surveillance. The search pursuant to this warrant produced the evidence which petitioner seeks to suppress.

■ A search warrant may only be issued upon a showing of probable cause. (U.S. Const., Amend. IV; Cal. Const., art. I, § 13; Pen. Code, § 1525.) Probable cause requires facts which are sufficient to lead a man of ordinary caution and prudence to believe and conscientiously to entertain a strong suspicion that there is property subject to seizure in the location for which the warrant is sought. (*Skelton* v. *Superior Court* (1969) 1 Cal.3d 144, 150 [81 Cal.Rptr. 613, 460 P.2d 485]; *People* v. *Mack* (1977) 66 Cal.App.3d 839, 845 [136 Cal.Rptr. 283].)

■ The constitutional requirements when an affiant uses information from a confidential source to support a request for a search warrant were summarized by the California Supreme Court in *People* v. *Hamilton* (1969) 71 Cal.2d 176, 179-180 [77 Cal.Rptr. 785, 454 P.2d 681]: "In *Aguilar* v. *Texas* (1964) 378 U.S. 108 [12 L.Ed.2d 723, 84 S.Ct. 1509], the United States Supreme Court stated: 'Although an affidavit may be based upon hearsay information and need not reflect the direct personal observations of the affiant, [citation], the magistrate must be informed of some of the underlying circumstances from which the informant concluded that the narcotics were where he claimed they were, and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed [citation], was "credible" or his information "reliable".' (Fn. omitted.) (378 U.S. at p. 114 [12 L.Ed.2d at p. 728].) The high court has since referred to this formulation as '*Aguilar's* two-pronged test.' [Citation.]

"Following *Aguilar,* California courts have held that for an affidavit based on an informant's hearsay statement to be legally sufficient to support the issuance of a search warrant, two requirements must be met: (1) the affidavit must allege the informant's statement in language that is factual rather than conclusionary and must establish that the informant spoke with personal knowledge of the matters contained in such statement; and (2) the affidavit must contain some underlying factual information from which the magistrate issuing the warrant can reasonably conclude that the informant was credible or his information reliable. [Citations.]" (See also *People* v. *Superior Court* (*Johnson*) (1972) 6 Cal.3d 704, 711 [100 Cal.Rptr. 319, 493 P.2d 1183]; *Price* v. *Superior Court* (1970) 1 Cal.3d.836, 840 [83 Cal.Rptr. 369, 463 P.2d 721].)

Remembering that it is the duty of the court to save the warrant if it can in good conscience do so, the court in *People* v. *Superior Court*

(*Johnson*), *supra,* 6 Cal.3d 704, 711, quoting *United States* v. *Ventresca* (1965) 380 U.S. 102, 108-109 [13 L.Ed.2d 684, 688-689, 85 S.Ct. 741], said:

"'If the teachings of the Court's cases are to be followed and the constitutional policy served, affidavits for search warrants...must be tested and interpreted by magistrates *and courts* in a commonsense and realistic fashion. They are normally drafted by non-lawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. A grudging or negative attitude by reviewing courts toward warrants will tend to discourage police officers from submitting their evidence to a judicial officer before acting.

"'This is not to say that probable cause can be made out by affidavits which are purely conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the "underlying circumstances" upon which that belief is based. [Citation.] Recital of some of the underlying circumstances in the affidavit is essential if the magistrate is to perform his detached function and not serve merely as a rubber stamp for the police. However, where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, *the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner.* Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.'"

The affidavit here tells us nothing about the premises to be searched—the residence at 674 Sandercock, except that this happened to be a residence where declarant went—after advising informant that he had to get cocaine from his supplier and directing informant to the area of the residence. We are not told who resided there; what, if any, connection declarant had with the residence; whether he brought the cocaine to the residence; or whether he removed it from a stash a seller kept there. All we know is that declarant told informant he had to get the cocaine from his supplier, directed the informant to the area, got out of the car, went up some steps to 674 Sandercock, and within a short time came back down the steps.

We believe that, when tested under the *Ventresca-Johnson* auspices, the affidavit survives judicial scrutiny.

Petitioner contends that: (1) informant is an unreliable informant and his statements are unreliable and cannot be considered by this court; and (2) the affidavit is defective in that it contains only two components of relevant information—(a) a hearsay statement allegedly made by declarant to informant, and (b) a purported purchase of a quantity of cocaine by informant from declarant.

We now examine each of petitioner's contentions in light of the applicable law.

■ First, we find from a reading of the affidavit of Treanor that informant is a "confidential informant." As such, he must meet the "two-pronged' test to allow his information to be relied upon for the issuance of a search warrant.

The crucial information from informant is the allegation that declarant *made the statement* (as opposed to the *truth of the statement*) that he had to get the cocaine from his supplier prior to the sale. It is clear that informant had first-hand knowledge of his conversations with declarant.

In *People* v. *Superior Court (Bingham)* (1979) 91 Cal.App.3d 463, 472-473 [154 Cal.Rptr. 157], the court stated: "The United States Supreme Court has consistently held that *hearsay* information will support issuance of a search warrant. '[A]n affidavit [for a search warrant] may be based on hearsay information and need not reflect the direct personal observations of the affiant,...' (*Aguilar* v. *Texas, supra,* 378 U.S. 108, 114 [12 L.Ed.2d 723, 729]; see also *Franks* v. *Delaware* (1978) 438 U.S. 154, 165 [57 L.Ed.2d 667, 678, 98 S.Ct. 2674, 2681]; *McCray* v. *Illinois* (1967) 386 U.S. 300, 304 [18 L.Ed.2d 62, 66-67, 87 S.Ct. 1056]; *United States* v. *Ventresca, supra,* 380 U.S. 102, 110 [13 L.Ed.2d 684, 690].) The same rule, of course, is followed in California. (See *Price* v. *Superior Court, supra,* 1 Cal.3d 836, 840-841.) Indeed the usual search warrant, based on a reliable police informer's or a citizen-informant's information, is *necessarily* founded upon hearsay.

"Although the nation's high court appears never to have *expressly* addressed itself to the question whether *double hearsay* will sustain a

search warrant, at least twice it has *impliedly* done so. In *United States v. Ventresca, supra,* 380 U.S. 102, 'investigators' reported criminal activity to other 'investigators' who in turn reported it to the affiant. Without *express* consideration of the affidavit's double hearsay, a search warrant based mainly on that information was affirmed. In *Rugendorf v. United States* (1964) 376 U.S. 528 [11 L.Ed.2d 887, 84 S.Ct. 825], a federal law enforcement officer in Alabama had reported information from two Alabama police informers and a police officer, to a Chicago law enforcement officer affiant. Again, without *express* mention of the affidavit's double hearsay nature, a search warrant issued upon it was found valid. In each case the court determined that the critical issue was whether the affidavit met what has come to be known as the above described *Aguilar-Spinelli* test.

"It thus appears from the high court's holdings, that whether hearsay or *double hearsay* information of criminal activity will support a search warrant depends not upon terminology or ritualistic formula, but upon the quality and persuasiveness of the information itself."

Our inquiry then is whether the magistrate in this case might have reasonably concluded that the affiant's hearsay upon hearsay affidavit otherwise met the requirements of *Aguilar.*

As we indicated above, it is clear that informant had first-hand knowledge of his conversations with declarant. The persuasiveness of the information accepted by informant consummated in a successful buy, all of which was corroborated by the observations of Treanor. Hence, the first prong of *Aguilar* is satisfied.

As to the second prong of *Aguilar,* although there are no facts in Treanor's affidavit to indicate that the informant had been utilized in the past and found to be reliable, information obtained from an untested informant may be deemed sufficient if corroborated in essential aspects by other facts, sources or circumstances. (*People v. Fein* (1971) 4 Cal.3d 747, 752-753 [94 Cal.Rptr. 607, 484 P.2d 583].) In this case, informant's information that declarant stated he had to get the cocaine from the supplier before selling the informant some cocaine was corroborated by Treanor's observations. Informant and declarant drove to a new location after declarant joined informant. Informant parked at a location and declarant left the car, walking around the corner and going to an apartment for a short period of time. He returned to the car and

sold informant a substance that later proved to be cocaine. We are of the opinion that these facts corroborate informant's statement concerning declarant's statement that he had to get the cocaine from his supplier.[1]

Therefore, we are of the opinion that the facts in the affidavit were sufficient to support a finding that informant was credible and reliable when relating the information that declarant made the statement that he had to get the cocaine from his supplier before selling informant cocaine.

We are now called upon to decide whether declarant can be established as reliable and credible by Treanor and meet the "two-pronged test" of *Aguilar.*

A crucial issue here is whether the "two-pronged test" of *Aguilar* must even be applied to the hearsay declarant of the informant. The California Supreme Court clearly indicated that it must in *Price* v. *Superior Court, supra,* 1 Cal.3d at page 841: "[E]ven assuming that a search warrant could properly be issued on the basis of such double hearsay, both 'prongs' of the *Aguilar* test would have to be met both as to the informant's statement and as to the statement of the declarant reported by the informant. [Citations.]"

However, there is authority holding that a hearsay declarant who is involved in criminal activity under investigation need not meet the test of *Aguilar.* In the case of *In re Jean M.* (1971) 16 Cal.App.3d 96, 103-104 [93 Cal.Rptr. 679], the court stated: "[W]e believe that the so called 'two-prong' *Aguilar* test, if satisfied as to the primary confidential informant, need not be projected to a declarant whose statements are recounted by the confidential informant if that declarant is a suspect and the focus of the investigation.

"The critical considerations are simply (1) that the statements were made, (2) the circumstances under which they were uttered, and (3) the

---

[1]In the trial court, respondent had argued that informant was a reliable and credible informant because he qualified as a citizen informant. However, the fact that informant had no criminal record known to affiant and was employed as a private security agent is insufficient. A citizen informant who is deemed reliable is designed to encompass "private citizens who are witnesses to or victims of a criminal act," and it does not appear from the affidavit that informant would fit that category. (See *People* v. *Ramey* (1976) 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333]; *People* v. *Superior Court (Bingham), supra,* 91 Cal.App.3d 463, 471, 472 [154 Cal.Rptr. 157].)

significance which a reasonable person would attach to them." And, as the court stated in *People* v. *Christian* (1972) 27 Cal.App.3d 554, 560 [103 Cal.Rptr. 740], concerning the statements of a third party as related by an affiant's confidential reliable informant: "The *Aguilar* requirements of factual showing of reliability of the informant and his personal knowledge of the facts of probable cause apply, however, only where probable cause is based upon information from an informer. Here Sonny was not an informer, one who acts as a tipster of crime. He was an actual participant in a transaction in contraband unknowingly dealing with an undercover officer rather than a customer. His statements concerning the location of the contraband are, if anything, entitled to more weight than those of a tipster, satisfying *Aguilar's* two-pronged test. [Citation.]"

■ Therefore, following *Jean M.* and *Christian,* we are of the opinion that declarant need not independently meet the requirements of *Aguilar,* since it appears on the face of the affidavit that the informant was established as reliable and credible and that the informant was acting as an agent for affiant Treanor "in order to purchase suspected controlled substances from a seller"—with the seller being declarant in this case. Declarant was thus "a suspect and the focus of the investigation," and the information leading to petitioner as declarant's supplier was an unexpected dividend of the investigation.

Notwithstanding *Jean M.* and *Christian,* we are of the opinion that declarant meets the first prong of *Aguilar,* since he would have personal knowledge of who his supplier was and where to contact that supplier. The second prong—reliability—was met by the corroborating facts observed by Treanor.

The writ is denied.

Brown (G. A.), P. J., and Hopper, J., concurred.