[Crim. No. 3695. Fifth Dist. July 31, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
GARY ORAN SMITH, Defendant and Appellant.

**COUNSEL**

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, Richard L. Phillips, George A. Lagomarsino and Gayle Guynup, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Nelson P. Kempsky and Theodora Poloynis-Engen, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**HAMLIN, J.**\*—Defendant appeals from a judgment by the court convicting him of possession of marijuana for sale (Health & Saf. Code,

---

\*Assigned by the Chairperson of the Judicial Council.

§ 11359). The contraband was discovered in appellant's motel room during a search conducted pursuant to a search warrant. Appellant contends the affidavit in support of the search warrant failed to provide probable cause to believe the marijuana was still in appellant's motel room at the time the warrant was sought. We disagree.

Before examining this contention, we set forth the applicable legal principles and factual circumstances. ■ It is established law that a search warrant affidavit must provide probable cause to believe the material to be seized is still on the premises to be searched when the warrant is sought. (*People v. Mesa* (1975) 14 Cal.3d 466, 470 [121 Cal.Rptr. 473, 535 P.2d 337]; *Alexander v. Superior Court* (1973) 9 Cal.3d 387, 393 [107 Cal.Rptr. 483, 508 P.2d 1131].)

■ The standards for reviewing search warrant affidavits were stated in *United States v. Ventresca* (1965) 380 U.S. 102 [13 L.Ed.2d 684, 85 S.Ct. 741]. That statement was quoted with approval by the California Supreme Court in *People v. Mesa, supra,* 14 Cal.3d 466, at page 469 as follows: "'If the teachings of the [United States Supreme] Court's cases are to be followed and the constitutional policy served, affidavits for search warrants...must be tested and interpreted by magistrates and courts in a *commonsense and realistic fashion.* They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. *Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area.* A grudging or negative attitude by reviewing courts will tend to discourage police officers from submitting their evidence to a judicial officer before acting. [¶]...[T]he courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner. Although in a particular case it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants.' (*Id.,* at pp. 108-109...; see *People v. Superior Court (Johnson)* (1972) 6 Cal.3d 704, 711....)"

■■ The standards of review of the trial court's determination on this issue in a suppression proceeding under Penal Code section 1538.5 are stated in *People v. Lawler* (1973) 9 Cal.3d 156, at page 160 [107 Cal.Rptr. 13, 507 P.2d 621]: "'"A proceeding under section 1538.5 to suppress evidence is one in which a full hearing is held on the issues before the superior court *sitting as a finder of fact.*" (*People v. Heard*

(1968) 266 Cal.App.2d 747, 749....)' (*People v. West* (1970) 3 Cal.3d 595, 602....) (Italics added.) In such a proceeding the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence. The trial court also has the duty to decide whether, on the facts found, the search was unreasonable within the meaning of the Constitution. Although that issue is a question of law, the trial court's conclusion on the point should not lightly be challenged by appeal or by petition for extraordinary writ. Of course, if such review is nevertheless sought, it becomes the ultimate responsibility of the appellate court to measure the facts, as found by the trier, against the constitutional standard of reasonableness." (Fn. omitted.) (See also *People v. Caffott* (1980) 105 Cal.App.3d 775, 781 [164 Cal.Rptr. 499].)

The affidavit which appellant attacks is that of Stanislaus County Sheriff's Deputy Thomas Ford. The contents of that affidavit are quoted in part and summarized in part below.

"I, THOMAS FORD, am a Deputy Sheriff with the Stanislaus County Sheriff's Department, and I have been a Deputy Sheriff for six years. For the past one year I have been assigned exclusively as a narcotics detective with the Stanislaus County Drug Enforcement Unit, approximately six months of which were spent in an undercover capacity. I have attended approximately twelve hours of narcotics training in Basic Police Training. I have also attended an eighty hour course in narcotics investigation in Sacramento, California. I have attended an eight hour course as provided by the Valtox Laboratories in Davis, California, on the identification and analysis of controlled substances. I have also attended a twenty-four hour course in Orange County California on the identification and examination of subjects under the influence of narcotics and dangerous drugs. I have also testified in the Municipal and Superior Courts of Stanislaus County as an expert on the identification of marijuana.

"I have reasonable cause to believe, and I do believe, that there can now be found at Room Number One of an old Motel on East Barnhart Road next to Highway 99 north of Turlock, California, evidence which

will tend to establish violations of Sections 11357 and 11359 of the California Health and Safety Code.

"I have observed the Room Number One of an old Motel located on East Barnhart Road, next to Highway 99, north of Turlock, California, and I describe it as follows:...."

At this point affiant gives a detailed description of the motel and the location of room number one. The affidavit then continues: "I have received information from a confidential reliable informant whom I shall hereafter refer to as X." [The facts underlying affiant's characterization of X as reliable and explaining the need to keep the informant's identity confidential then follow].

"This confidential reliable informant has provided me with the following information:

"Within the past seventy-two hours of today's date, October 12, 1977, X advised me that X had been to a residence of a subject known to X as Gary Smith. [Emphasis added.] X described Gary Smith as a young white male adult approximately twenty years of age, having light brown hair. X also advised that the subject Gary Smith drives a green Dodge Charger with mag wheels. X advised that the residence where Gary Smith was living is an old motel next to the highway between Taylor Road and Keyes Road. X further advised that the room which Gary Smith was occupying was the room at the north end of the motel, however X did not know what the number of the room was. X advised that while at the residence of Gary Smith X had observed approximately two pounds of marijuana which had been packaged in plastic ziplock bags. X also advised that X was told by the subject Gary Smith he was attempting to sell the marijuana. X has used marijuana in the past and is familiar with its appearance and the way it is uded [sic] and packaged for sale.

"As an experienced narcotics officer I can state that marijuana is frequently packaged in plastic bags for sale.

"I have gone by the location described by X and found it to be exactly as described by X. I also observed in front of Room Number One, the northern most room on the motel, a green Dodge Charger bearing California License XAA 331. Upon running a registration check with the Department of Motor Vehicles on this vehicle it did come back reg-

istered to a 1968 Dodge with the registered owner a Gary Oran Smith, 534 Sunnyside, Turlock, California. In checking the microfiche index at the Drug Enforcement Unit I find a listing in there of a Gary Oran Smith with a birthday of October 17, 1957, this being the same age as described by X.

"As an experienced narcotics officer I can also state that narcotics and drugs are frequently transported and concealed in motor vehicles.

"THEREFORE, I ask the Court to authorize a search of the residence and grounds of Room Number One at the old Motel located at the southeast corner of East Barnhart Road on Highway 99 just north of Turlock, California, and of the person of Gary Oran Smith, and of a 1968 Dodge Charger bearing California License XAA 331, for marijuana and paraphernalia associated with the use and sale of marijuana, and for documents identifying the occupants of Room Number One at the old Motel located at the southeast corner of East Barnhart Road on Highway 99 just north of Turlock, California, which documents shall include, but not be limited to, such items as rental receipts, utility bills and receipts and letters addressed to the occupants of Room Number One at the Old Motel located at the southeast corner of East Barnhart Road on Highway 99 just north of Turlock, California, and for any records or documents showing sales of marijuana."

█  We believe a common sense reading of this entire affidavit reveals facts from which the magistrate could reasonably determine there was probable cause to believe marijuana was still in appellant's motel room. A grammarian's interpretation of the underscored sentence in the affidavit directly stating the time frame "within the past seventy-two hours of today's date" would undoubtedly be the interpretation which appellant urges. The placement of the quoted prepositional phrase does suggest that it modifies only the verb of the main sentence "X advised me that..." and not the dependent clause of the sentence "that X had been to a residence of a subject known to X as Gary Smith." But that interpretation is unrealistic in view of the contents of the entire affidavit. Even though the affidavit is inartfully drawn, we believe the affiant's meaning becomes clear when this sentence is viewed in the context of the entire affidavit.

The first reference to the receipt of information from the informant makes no mention of a time frame. It is only when the affiant zeros in on the *contents* of the "tip" that the time frame is mentioned. This sug-

gests the phrase "within the past seventy-two hours" was not just inserted to explain when the information was received by the affiant, but rather to modify the new matter in the sentence—namely, the time X had been to the residence.

It is also important to note that the time reference appears for the first time after the phrase: "This confidential reliable informant has provided me with the following information:" We believe the phrase "within the past seventy-two hours" must have been intended to explain the time X went to the premises rather than the time X spoke to the affiant. It is not a common sense interpretation to conclude that the informant would tell the affiant when their conversation took place.

In deciding what the magistrate reasonably assumed, it is proper to consider affiant's statement in the affidavit that "I have reasonable cause to believe, and I do believe, that there can *now* be found [evidence of marijuana in appellant's motel room]" (italics added). (See *People* v. *Wachter* (1976) 58 Cal.App.3d 911, 918, 920 [130 Cal.Rptr. 279].) The magistrate was entitled to arrive at any reasonable interpretation of the affidavit which is consistent with the trained law enforcement officer's statement that he had reasonable cause to believe the marijuana can *now* be found in appellant's motel room. Such a conclusion is not inconsistent with the established rule that an affidavit containing only opinions and conclusions does not support a finding of probable cause. (See *People* v. *Pellegrin* (1977) 78 Cal.App.3d 913, 917 [144 Cal.Rptr. 421]; *People* v. *Castro* (1967) 249 Cal.App.2d 168, 171 [57 Cal.Rptr. 108].) Here, the underlying facts are stated in the affidavit. The magistrate's problem, and the problem of this court, is the common sense interpretation of that statement. Such an interpretation of the entire affidavit provides probable cause to believe marijuana was in appellant's motel room at the time the search warrant was issued.

An alternative basis sustains the determination of the trial court that the supporting affidavit for the search warrant contains facts sufficient to establish probable cause that marijuana was in appellant's motel room at the time of issuance. At most, the grammatical construction of the sole direct statement of the time frame for the informant's observation of marijuana creates an ambiguity. The affidavit read as contended by the People, i.e., that the phrase "within the past seventy-two hours of today's date" explains both the time of the advice by the informant and the time of observation, is sufficient on its face to establish probable cause. Accordingly, the prosecution had the right to produce evidence

of the intended meaning of the language in the affidavit. The meaning asserted is consistent with one to which the affidavit is reasonably susceptible even though the technical grammatical interpretation asserted by appellant is the more likely one if the sentence in question is viewed in isolation. (See *People* v. *Christian* (1972) 27 Cal.App.3d 554, 560-561 [103 Cal.Rptr. 740], cert. den. (1973) 411 U.S. 937 [36 L.Ed.2d 398, 93 S.Ct. 1915].) The reasons for admitting rehabilitative evidence in that case apply equally to this case. The *Christian* court stated its reasons as follows: "We recognize that in adopting the principle of the admissibility of rehabilitative evidence, which we here apply, we are choosing between inherently conflicting policy considerations. The purpose of appellate review of the sufficiency of the affidavit to support the search warrant is to insure that the affidavit supplies facts of cause to search so that the magistrate issuing the warrant decides upon the existence of cause with judicial detachment and does not act as a rubber stamp. (*Halpin* v. *Superior Court*, 6 Cal.3d 885, 890...; *People* v. *Superior Court (Johnson)*, 6 Cal.3d 704...; *United States* v. *Ventresca*, 380 U.S. 102, 108-109...; *United States* v. *Harris*, 403 U.S. 573....) Consideration by another court of evidence sustaining probable cause that was not before the magistrate detracts from that purpose. Conversely, it is the purpose of the rule which excludes illegally obtained evidence to deter illegal police conduct, not deficient police draftsmanship in the preparation of affidavits. (See Kipperman, *Inaccurate Search Warrant Affidavits as a Ground for Suppressing Evidence*, 84 Harv.L.Rev. 825, 831.) There is also a strong policy encouraging search by warrant rather than on another permissible basis. (*United States* v. *Ventresca, supra*, 380 U.S. 102, 108-109.) If the reviewing judiciary treats the affidavit too strictly, the result reached tends not to serve the purpose of the exclusionary rule and to encourage warrantless searches. That consideration dictates that the normal presumption of correctness of the magistrate's determination be applied where a possible construction of the affidavit supports the determination." (*People* v. *Christian, supra*, at p. 561.)

In the lower court hearing on appellant's suppression motion, affiant Thomas Ford testified that X told him that within 72 hours of the time X was then talking to Ford, X had been to appellant's residence. That evidence was properly admitted by the lower court to establish that the magistrate's interpretation of the supporting affidavit was reasonable.

Ordinary rules of grammatical construction should not be lightly disregarded, but those rules do not prevail over a common sense and realistic interpretation of the entire supporting affidavit.

Since Officer Ford's affidavit reasonably supported the finding of probable cause to issue the search warrant, appellant's motion to suppress evidence of marijuana and his admissions to Officer Ford was properly denied.

The judgment is affirmed.

Brown (G. A.), P. J., concurred.

**ZENOVICH, J.**—I respectfully dissent.

The majority attempts to characterize the present affidavit as either containing sufficient facts for probable cause to believe the marijuana was still in the motel room or containing an ambiguity subject to rehabilitation. I disagree with this attempted characterization. Instead, this is a case where there are *no facts indicative of the time of X's observations of marijuana.*

The lead opinion concedes that the only time phrase—"Within the past seventy-two hours of today's date [date of executing the search warrant affidavit]"—modifies the clause dealing with X's talk to the affiant officer. It also recognizes that sound grammatical construction compels such an interpretation. Nevertheless, the majority posits that a reviewing court can presume that the magistrate could reasonably conclude that the time reference dealt with X's observations of contraband through some scheme of grammatical juxtapositioning alien to the English language. Although *Ventresca* mandates a common sense reading of search warrant affidavits, it does not apply to situations in which there is an *absence* of language reflecting "fresh" observations by a confidential informant.

With the above in mind, it is pertinent to examine the "facts" upon which the majority sustains the warrant.

First, it is suggested that affiant's third reference to receipt of information from the informant was included for another purpose (i.e., to suggest the freshness of informant's observations). Although there was repetition of affiant's statement about receipt of information, this is a natural consequence of the way he drafted the affidavit. The affiant sequentially set forth the reasons for the informant's reliability and the need to maintain confidentiality. His repetitiveness was required in order to give continuity to the scenario he was depicting. It does not

inferentially follow that the repetition was meant to refer to an unrelated subject, namely, the time of X's visit to the motel room. (See Evid. Code, § 600, subd. (b).)

Second, the lead opinion then suggests that the insertion of the time reference can be interpreted as modifying a matter not mentioned previously—i.e., X's visit to appellant's room and observation of contraband. Again, the insertion of the time frame at this point does not necessarily mean that the phrase modified the time of X's observations. Without such a modifying phrase, there would be no indication that the conversation of affiant-informant was of *recent* occurrence. Revelation of the time of the X-affiant talk was important, since it showed that the conversation itself was not stale.[1]

Third, the majority next places emphasis on the affiant's statement that "There can *now* be found" evidence of marijuana in appellant's room and upon reasoning contained in *Watcher*. Although stating to the contrary, the majority is giving weight to a conclusory assertion for purposes of finding probable cause. There is no factual basis in the affidavit which supports the affiant's conclusions; thus, the bare statement by the officer is the type of assertion deemed deficient under the law. (See Pen. Code, § 1527; *People* v. *Castro* (1967) 249 Cal.App.2d 168, 171 [57 Cal.Rptr. 108].)

*Wachter* does not command the result suggested by the lead opinion. In that case, an affidavit failed to state *the specific date* on which an individual made observations leading to discovery of marijuana on a defendant's premises. In sustaining the warrant, we relied partially on the fact that the affidavit recited that "there is *now*. . .on the premises described" (defendant's property) "marijuana." (Italics added.) We specifically noted that the word "now" was in the present tense, which suggests that the marijuana was being grown on defendant's property at the time the affidavit was executed. (*People* v. *Wachter* (1976) 58 Cal.

---

[1] A somewhat analogous situation was confronted in *People* v. *Nelson* (1959) 171 Cal.App.2d 356 [340 P.2d 718], overruled on another point, *People* v. *Butler* (1966) 64 Cal.2d 842, 844-845 [52 Cal.Rptr. 4, 415 P.2d 819]. There, the affidavit referred to the date upon which information was first received from undisclosed informants, although there was no mention of when the informants themselves saw marijuana plants growing on defendant's premises. The court sustained the affidavit because the affiant himself subsequently observed grown marijuana in the pertinent area. (*Nelson, supra*, 171 Cal.App.2d at pp. 359-360.) This suggests that a different result might occur in circumstances where there is no reference to an informant's observation and no independent corroboration, as is the case in the present situation.

App.3d 911, 918 [130 Cal.Rptr. 279].) Although placing some reliance on this wording, our decision hinged upon two other reasons ("even more persuasive and substantial") from which the magistrate could reasonably infer that the marijuana was observed at a time closely proximating the execution of the affidavit. First, it was noted that the individual observing the marijuana was a law enforcement officer who was on vacation and who had a duty to promptly report the information to the sheriff's office. Second, we also found that staleness was rebutted by the nature of the marijuana observed. In particular, we stated: "Most of the cases involving a lack of specificity as to the date of the discovery of the crime deal with such items as narcotics and drugs which are easily transportable, consumed, or hidden. That is not true of a growing crop of marijuana. It can disappear overnight only under the most exceptional circumstances. Even though it be harvested, evidence of its growth will continue to exist in the form of stubble and underground roots. It is not comparable to objects that are transitory, movable, easily hidden or consumed. *For this reason a different time element must be applied to the instant case than would be applicable to the ordinary drug or narcotic violation cases.*" (*Id.*, at pp. 919-920, italics added.) After emphasizing that a growing crop was involved, we then noted that the magistrate's conclusion was "further strengthened by the statement in the affidavit to the effect that marijuana was *now* growing on defendant's premises." (*Id.*, at p. 920.) Thus, a close reading of *Wachter* shows that the conclusory word "now" was supported by inferences which could be drawn from facts contained in the affidavit. Furthermore, there were surrounding circumstances which made it reasonable for the magistrate to infer that the observations were recent in time.

The above discussion shows that *Wachter* is distinguishable from the instant situation. Unlike *Wachter*, the present case involves a bald conclusory statement which has no underpinnings in the facts revealed in the affidavit presented before the magistrate. Also, the present case involves a rather ambulatory form of narcotics (cut marijuana), which falls within the more stringent requirements of specificity applicable to transitory objects. (*Id.*, at p. 920.) Because of its divergent factual setting, *Wachter* is inappropriate authority for sustaining the affidavit here.

Moreover, a reading of the *Pellegrin* decision cuts against the result reached by the majority. In that case, the court determined that a conclusory statement (i.e., "such plant did not appear to be growing wild") did not indicate that marijuana was being cultivated in a defendant's

backyard, since the only supporting fact was that the affiant had observed one marijuana plant growing in the backyard area. The court specifically ruled that: "The magistrate is not presented with any facts indicating marijuana was being cultivated in Pellegrin's backyard. Without a showing the marijuana was not growing wild there are no facts from which it can be inferred contraband was in Pellegrin's home. Miller's [the affiant's] conclusory statement...was of no assistance to the magistrate." (*People* v. *Pellegrin* (1977) 78 Cal.App.3d 913, 917 [144 Cal.Rptr. 421].) As in *Pellegrin*, there were no facts supporting Ford's opinion that marijuana could then be found in appellant's motel room. Thus, *Pellegrin* shows that the present affidavit cannot legally support the magistrate's finding of probable cause.

The majority alternatively indicates that there was an ambiguity in the affidavit which could be cured by the rehabilitative procedure outlined in the *Christian* case. I do not believe this is an "ambiguity" case; instead, it is a "no time element" situation with regard to the informant's observations of the contraband. As such, the attempt at *post facto* reformation must fail. Unlike *Christian*, there is no ambiguous language in the present affidavit; instead, the case at bar involves an affidavit in which there are no operative facts about the time of informant's observations of contraband.[2] The rehabilitative evidence garnered at the suppression proceeding could not retroactively establish probable cause, since the language about the time of the observation was not before the issuing magistrate. Since the magistrate asked no questions about the time of the observation and Officer Ford did not clarify this time frame before the magistrate, the critical requirement of having a magistrate scrutinize search warrants would be abrogated if this rehabilitative procedure were extended to cover affidavits lacking averments of operative facts.[3] The attempt to characterize the present situation as an "ambiguity" must fail; it is a "no time element" case not amenable to rehabilitation.

---

[2] In a footnote, the *Christian* court stated: "The affidavit read as contended by the prosecution must, of course, *be sufficient on its face* to establish probable cause. The rehabilitative evidence of operative facts as opposed to meaning of words used in the affidavit is material only to the extent that it rebuts defense evidence tending to show that the averments of operative fact *in the affidavit* as so construed are inaccurate." (*People* v. *Christian* (1972) 27 Cal.App.3d 554, 561, fn. 5 [103 Cal.Rptr. 740]; italics added.)

This passage shows that the *Christian* methodology is only applicable when there is *actual* language in the affidavit subject to differing interpretations.

[3] The clarifying testimony of affiant *before the superior court judge* who heard the suppression motion is immaterial; the magistrate is the focal concern.

Although not mentioned by the majority, I also reject another argument presented by respondent in its brief. Respondent argues that the magistrate could conclude that X's observations were recent because he was aware of the police desire to maintain the confidential informant's anonymity. It is respondent's contention that "within the past seventy-two hours of today's date" is deliberately indefinite, since it obscures the time and more adequately safeguards X's identity. Based on the magistrate's cognizance of this protective guise, it is suggested that the challenged passage could be read as dealing with the time frame of X's visit to appellant's room. The desire to protect the anonymity of the informant does not compel the conclusion that his observations of marijuana were necessarily made near the time that he related the perceptions to Officer Ford. Excision of X's real name adequately protects his identity; it does not inescapably follow that use of the term "within seventy-two hours of today's date" was interpreted by the magistrate as a means of couching the true identity of X.

Search warrant affidavits should not be interpreted in a hypertechnical or pedantic manner. Nonetheless, it is my opinion that the present one lacks any language suggestive of the time of the informant's observations under ordinary rules of grammatical construction. Thus, the information must be deemed stale as a matter of law. It is my conviction that the affidavit was insufficient to support the issuance of the search warrant; the marijuana and admissions to Officer Ford should have been suppressed accordingly.

Appellant's petition for a hearing by the Supreme Court was denied October 8, 1980.